860 S.W.2d 133 (1993)
Tina AZBILL and Terry Azbill, Sr., Appellants,
v.
DALLAS COUNTY CHILD PROTECTIVE SERVICES UNIT OF the TEXAS DEPARTMENT OF HUMAN AND REGULATORY SERVICES, Appellees.
No. 05-93-00301-CV.
Court of Appeals of Texas, Dallas.
June 22, 1993.
*134 Maridell J. Templeton, Michael L. Meripolski, Dallas, for appellants.
Michael D. Munden, Douglas Dunn (Guardian for the children), Dallas, for appellees.
*135 Before BAKER, ROSENBERG, and MORRIS, JJ.

PRESUBMISSION OPINION
BAKER, Justice.
After reviewing the transcript, the Court questioned whether appellant Terry Azbill, Sr. timely perfected his appeal. We conclude that Terry timely perfected his appeal. However, in determining whether Terry timely perfected his appeal, we also conclude that the trial court's November 30, 1992 divorce decree is a nullity.

SUMMARY
Whether Terry timely perfected his appeal depends upon a series of jurisdictional questions: whether there is one or two judgments; if there are two judgments, which of the two is controlling; whether Tina's and Terry's motions for new trial attack the surviving final judgment; whether Terry's affidavit of inability to pay in lieu of appeal bond perfected his appeal; and, assuming Terry's affidavit of inability to pay in lieu of appeal bond did not perfect his appeal, whether Terry's cash deposit in lieu of appeal bond timely perfected his appeal. This opinion considers and resolves each of these issues in turn.

TWO PETITIONS
On October 9, 1991, the Dallas County Child Protective Services Unit of the Texas Department of Human Services, an agency of the State of Texas (the State), brought suit against Tina and Terry. The State sought to terminate the parental rights of Tina and Terry to their four children. The State filed the suit in the 305th District Court under cause number 91-877-X-305th.
On January 31, 1992, while the termination proceeding was pending, Tina filed a cross-action for divorce against Terry.[1] Tina filed this cross-action in the 305th District Court under the same cause number 91-877-X-305th.

TWO TRIALS
On September 8, 1992, the trial court conducted a jury trial on the termination proceeding and a bench trial on the divorce proceeding. Although the transcript shows that the trial court conducted separate trials, there is no order for separate trials.

THE TERMINATION JUDGMENT
On November 10, 1992, the trial court signed a judgment terminating Tina's and Terry's parental rights to their four children. This termination judgment appointed the State as permanent managing conservator. The termination judgment makes no reference to the divorce proceeding.
The first jurisdictional issue is whether the termination judgment was a final judgment. We hold that the termination judgment was final.
When determining finality, the first issue is whether a presumption of finality applies to the judgment in question. The Supreme Court of Texas has written:
When a judgment, not intrinsically interlocutory in character, is rendered and entered in a case regularly set for a conventional trial on the merits, no order for a separate trial of issues having been entered pursuant to Rule 174, Texas Rules of Civil Procedure, it will be presumed for appeal purposes that the Court intended to, and did, dispose of all parties legally before it and of all issues made by the pleadings between such parties.
North E. Indep. Sch. Dist. v. Aldridge, 400 S.W.2d 893, 897-98 (Tex.1966) (emphasis added). All claims not expressly disposed of are presumed denied. See Aldridge, 400 S.W.2d at 898.
The termination judgment was a product of a jury trial. The trial court rendered the termination judgment after it had set the case for a conventional trial on the merits. Nothing in the termination judgment is intrinsically interlocutory; the termination judgment reserves no issue for later disposition *136 and makes no reference to any order for separate trials. We hold that the Aldridge presumption of finality applies. Applying this presumption, we conclude the termination judgment denied every claim not expressly disposed of, including all the claims Tina asserted in her divorce petition. Aldridge, 400 S.W.2d at 898. Because of the Aldridge presumption, Tina did not establish any grounds meriting a divorce. See Tex. Fam.Code Ann. § 3.01-3.07 (Vernon 1993). Absent a divorce, a property division was unnecessary. TEX.FAM.CODE ANN. § 3.63 (Vernon 1993). In the termination judgment, the trial court terminated Tina's and Terry's parental rights. That judgment appointed the State as permanent managing conservator. Because of the termination judgment, no child conservatorship and support issues remained. TEX.FAM.CODE ANN. §§ 3.55(b), 11.01(3) (Vernon Supp.1993). The termination judgment was a final judgment.

THE DIVORCE DECREE
On November 30, 1992, the trial court signed a second judgment divorcing Tina from Terry and dividing their property. The divorce decree makes no disposition of the custody of the four children. Because Tina and Terry were no longer "parents" of the children as defined by the Texas Family Code, no custody and support disposition was necessary. See TEX.FAM.CODE ANN. § 11.01(3) (Vernon Supp.1993). It does recite: "The Court finds that [Tina] and [Terry] are the [birth] parents of the following children.... The Parent-Child relationship between the children and the [birth] parents was terminated by Court Order dated November 10, 1992."

TWO JUDGMENTS
The trial court signed two judgments. There can be only one final judgment in a case. Tex.R.Civ.P. 301; Cavazos v. Hancock, 686 S.W.2d 284, 286 (Tex.App.Amarillo 1985, orig. proceeding). We questioned whether there was any manner by which we could treat the two judgments as one. We further questioned whether we could treat the termination and divorce proceedings as independent and distinct for finality purposes. We conclude that we can do neither.
We note that had the termination judgment been interlocutory, it would have merged into the divorce decree. Radelow-Gittens Real Property Management v. Pamex Foods, 735 S.W.2d 558, 560 (Tex.App. Dallas 1987, writ ref'd n.r.e.) (op. on reh'g). This principle does not apply in this case because the termination judgment was not an interlocutory judgment. Had the trial court entered an order for separate trials or had the termination judgment reserved the divorce proceeding for later disposition, then the termination judgment would have been interlocutory under Aldridge. Under these circumstances, the termination judgment would have automatically merged into the divorce decree. Radelow-Gittens, 735 S.W.2d at 560.
We questioned whether the divorce decree incorporated the termination judgment into it by reference. Assuming the divorce decree's reference to the termination judgment incorporated the termination judgment into the divorce decree by reference, then the divorce decree may have modified and effectively replaced the termination judgment. Absent an incorporation by reference, the divorce decree and the termination judgment remain distinct judgments.
Courts construe orders and judgments under the same rules of interpretation as those applied to other written instruments. McLeod v. McLeod, 723 S.W.2d 777, 779 (Tex.App.Dallas 1987, no writ). Before one document incorporates a second document, the second document must unmistakably make the first document part of the second document. See Malone v. Shoemaker, 597 S.W.2d 473, 476 (Tex.Civ.App.Tyler 1980, no writ); Taylor v. Republic Nat'l Bank, 452 S.W.2d 560, 563 (Tex.Civ.App. Dallas 1970, writ ref'd n.r.e.). A mere reference to the first document is not an incorporation. See Trim v. Daniels, 862 S.W.2d 8, 10, at *3 (Tex.App.Houston [1st Dist.] 1992, n.w.h.); Taylor, 452 S.W.2d at 563; Schell v. Centex Materials Co., 450 S.W.2d *137 673, 676-77 (Tex.Civ.App.Austin 1970, no writ).[2] The divorce decree merely refers to the termination judgment. We conclude the trial court did not intend to incorporate the termination judgment into the divorce decree.
We questioned whether the trial court's de facto separate trials are sufficient to defeat the Aldridge presumption. Had the trial court signed an order for separate trials, the termination judgment would have been interlocutory. See Aldridge, 400 S.W.2d at 897-98. Our review of Aldridge indicates that simply conducting separate trials, as here, is not enough to overcome the Aldridge presumption. The Aldridge court required an "entered" order for separate trials. Aldridge, 400 S.W.2d at 897. After the trial court signs a judgment, the court clerk enters the signed judgment in the minutes of the court; "entered" is not synonymous with "signed" or "rendered." Burrell v. Cornelius, 570 S.W.2d 382, 384 (Tex.1978). Our transcript does not contain an entered order for separate trials. The fact that the trial court conducted separate trials is not enough to overcome the Aldridge presumption.
We questioned whether the termination judgment and divorce decree were interlocutory because the trial court did not dispose of all the issues in one document. See Stone v. Stone, 531 S.W.2d 850, 851 (Tex.Civ.App.Dallas 1975, no writ); Schell, 450 S.W.2d at 676-677; Thomas v. Shult, 436 S.W.2d 194, 196-97 (Tex.Civ.App.Houston [1st Dist.] 1968, no writ).[3] More recently, this Court has held that the dispositive orders need not appear in one document for a judgment to be final. See Radelow-Gittens, 735 S.W.2d at 560; Runnymede Corp. v. Metroplex Plaza, Inc., 543 S.W.2d 4, 5 (Tex. Civ.App.Dallas 1976, writ ref'd). In Runnymede Corp., we concluded that the Texas Supreme Court had apparently overruled Thomas in Webb v. Jorns, 488 S.W.2d 407 (Tex.1972). See Runnymede Corp., 543 S.W.2d at 5.
As explained in Radelow-Gittens, interlocutory judgments merge into the final judgment. See Radelow-Gittens, 735 S.W.2d at 560; accord City of Beaumont v. Guillory, 751 S.W.2d 491, 492 (Tex.1988) (per curiam); Webb, 488 S.W.2d at 409; Pan Am. Pet. Corp. v. Texas Pac. Coal & Oil Co., 159 Tex. 550, 324 S.W.2d 200, 201 (1959) (per curiam). A merger doctrine would be unnecessary if all dispositive orders had to appear in one document. The Texas Supreme Court has written:
[W]here an interlocutory order is entered disposing of one defendant, that order becomes final, and there is a final judgment, when a subsequent order is entered disposing of the remaining defendants.
H.B. Zachry Co. v. Thibodeaux, 364 S.W.2d 192, 193 (Tex.1963) (per curiam). We conclude that it is not necessary that all the dispositive rulings appear in one document before a judgment can become final.
We questioned whether it is possible to treat the termination proceeding and the divorce proceeding as independent actions for finality purposes, notwithstanding their common cause number. Probate and receivership proceedings may have multiple final judgments. See Bergeron v. Session, 554 S.W.2d 771, 775 (Tex.Civ.App.Dallas 1977, no writ). However, this case is not a probate or receivership proceeding. Had Tina filed her divorce petition after the trial court had signed the termination judgment, we could treat Tina's divorce petition as an independent suit under the same cause number as the termination proceeding. See Cockrell v. Central Sav. & Loan Ass'n, 788 S.W.2d 221, 224 (Tex.App.Dallas 1990, no writ) (per curiam). However, because Tina filed her divorce petition before the termination judgment, Cockrell is distinguishable.[4] Generally, when a trial court wants to treat two actions as independent suits, it must sever one of the actions and place it in a *138 second trial court cause number. In this instance, the trial court did not sever the suit affecting the parent-child relationship from the suit for divorce. See Tex.Fam.Code Ann. § 3.55(b) (Vernon 1993); Ault v. Mulanax, 724 S.W.2d 824, 829 (Tex.App.Texarkana 1986, no writ); but see Lipshy v. Lipshy, 525 S.W.2d 222, 224 (Tex.Civ.App.Dallas 1975, writ dism'd w.o.j.). We treat the termination proceeding and the divorce proceeding as part of the same suit.

WHICH JUDGMENT CONTROLS?
When there are two judgments in a case, only one can survive. There are two lines of cases considering this issue. We refer to these two lines as the Mullins line, Mullins v. Thomas, 136 Tex. 215, 150 S.W.2d 83, 84 (1941), and the City of Westlake Hills line, City of Westlake Hills v. State, 466 S.W.2d 722, 726-27 (Tex.1971). There is potentially a third line of cases. See Check v. Mitchell, 758 S.W.2d 755 (Tex.1988) (per curiam). However, after reviewing Check, we conclude that Check falls within the City of Westlake Hills line of cases.

A. The Mullins Line of Cases
The entry of a second judgment in the same case is not a vacation of the first, and if there is nothing to show the trial court vacated the first, the second is a nullity. Mullins, 150 S.W.2d at 84. Although Mullins is more than fifty years old, appellate courts continue to rely upon this principle. See Moncrief v. Harvey, 805 S.W.2d 20, 24 (Tex.App.Dallas 1991, no writ); Hammett v. Lee, 730 S.W.2d 350, 351 (Tex.App.Dallas 1987, writ dism'd w.o.j.); see also Charles L. Hardtke, Inc. v. Katz, 813 S.W.2d 548, 550 (Tex.App.Houston [1st Dist.] 1991, no writ); 410 West Ave. Ltd. v. Texas Trust Sav. Bank, F.S.B., 810 S.W.2d 422, 425 (Tex.App.San Antonio 1991, no writ); Gainesville Oil & Gas Co. v. Farm Credit Bank, 795 S.W.2d 826, 828 (Tex.App.Texarkana 1990, no writ); Cavazos, 686 S.W.2d at 286. The focus of Mullins is whether the second judgment vacates the first judgment.

B. The City of Westlake Hills Line of Cases
On other occasions, the Supreme Court of Texas has held that a second judgment replaces the first judgment, and, therefore, the second judgment controls. City of Westlake Hills, 466 S.W.2d at 726-27; see also B & M Machine Co. v. Avionic Enters., Inc., 566 S.W.2d 901 (Tex.1978) (per curiam). The focus of City of Westlake Hills and B & M Machine Co. is on whether anything in the record shows the trial court's intent to replace the first judgment with the second judgment.
In City of Westlake Hills, the first judgment was entitled, "Judgment," and the second judgment was headed, "Corrected Final Judgment." City of Westlake Hills, 466 S.W.2d at 727. The supreme court wrote:
[Appellant] cites Mullins v. Thomas, 136 Tex. 215, 150 S.W.2d 83 (1941) for the proposition that if there is nothing to show that the first judgment was vacated, the second judgment is a nullity and the time of appeal must be measured by the date of the first one. This leaves the question of whether the second judgment shows that it is replacing the first one. It is not necessary that the second judgment expressly state that the first judgment is vacated, though this would be the preferable procedure.
City of Westlake Hills, 466 S.W.2d at 726. By virtue of the "Corrected Final Judgment" heading, the supreme court held that the second judgment replaced the first judgment. City of Westlake Hills, 466 S.W.2d at 727.
In B & M Machine Co., the first judgment was captioned, "Final Judgment," and the second judgment was headed, "Amended Judgment." B & M Mach. Co., 566 S.W.2d at 901. The trial court's findings of fact and conclusions of law also noted that the trial court had amended the first judgment. B & M Mach. Co., 566 S.W.2d at 902. The supreme court wrote, "The record reflects that the second judgment reformed and, in effect, vacated the first judgment." B & M Mach. Co., 566 S.W.2d at 902.

*139 C. Check v. Mitchell
In Check v. Mitchell, the trial court signed an interlocutory summary judgment. On the same day, the trial court severed that summary judgment from the rest of the case. The severance order constituted the final judgment in the second cause number. Ryals v. Canales, 748 S.W.2d 601, 605 (Tex. App.Dallas 1988, orig. proceeding). Later, the trial court signed a second summary judgment in the severed cause under the severed cause number. The supreme court held that, apart from the new cause number, this second summary judgment varied from the earlier summary judgment in that: "[I]t reflected that a severance had been ordered and language was added to the effect that all writs and processes might issue and that all relief not expressly granted was denied." Check, 758 S.W.2d at 755-56. The appellant's cash deposit in lieu of appeal bond was timely as to the second judgment but was untimely as to the first. Our order in Check held that the appellate timetables ran from the first judgment, not the second judgment. Accordingly, we dismissed the appeal because the appellant did not timely perfect the appeal. The supreme court disagreed and wrote:
We hold that any change, whether or not material or substantial, made in a judgment while the trial court retains plenary power, operates to delay the commencement of the appellate timetable until the date the modified, corrected or reformed judgment is signed.
Check, 758 S.W.2d at 756. The supreme court reversed our judgment and remanded the case for further consideration.
Check relies strictly upon rule 329b of the Texas Rules of Civil Procedure. The opinion does not cite a single case. See also Landmark Am. Ins. Co. v. Pulse Ambulance Serv., Inc., 813 S.W.2d 497, 498 (Tex.1991) (per curiam). Check does not consider which of the two judgments survived. However, it appears to suggest that the second judgment survived because the opinion speaks in terms of the second judgment modifying, correcting, or reforming the earlier judgment. See Check, 758 S.W.2d at 756. To the extent that the supreme court in Check held that the second judgment replaced the first, Check is consistent with City of Westlake Hills. The proposition that the appellate timetables restart when the trial court replaces one judgment with a second judgment during its period of plenary jurisdiction is a logical extension of City of Westlake Hills.
The supreme court in Check did not appear to overrule Mullins. Generally, when overruling a case or a line of cases, courts identify the principle that is rejected and the case or cases that are overruled. Check did not identify or reject any other principles that were arguably inconsistent with those announced in Check. The supreme court did not identify any case or line of cases inconsistent with its Check decision. We conclude that Check did not overrule Mullins.

D. The Mullins and City of Westlake Hills Analysis
By signing a second judgment, a trial court does not automatically vacate the first judgment. Mullins, 150 S.W.2d at 84. The record must show that the trial court intended to vacate the first judgment and replace it with the second judgment. City of Westlake Hills, 466 S.W.2d at 726-27; see Mullins, 150 S.W.2d at 84. In this case, the termination judgment is captioned, "Judgment on the Verdict of Jury," and the divorce decree is headed, "Decree of Divorce." Nothing in the divorce decree suggests that the trial court intended the divorce decree to replace the termination judgment. To the contrary, the divorce decree shows on its face, because of the reference to the termination judgment, that the trial court intended the termination judgment to remain valid and binding. We hold that because the trial court did not intend to vacate the termination judgment, the City of Westlake Hills result does not apply. The second judgmentin this instance the divorce decreeis a nullity under the Mullins analysis.

TIMELINESS OF TINA'S AND TERRY'S APPEALS
The termination judgment is the final judgment. The divorce decree is a nullity. Mullins, 150 S.W.2d at 84. The next jurisdictional issue is whether the appellate timetables *140 restarted with the divorce decree despite its being a nullity.
The court in Mullins held that the intermediate appellate court erred by reversing the first judgment because there was no appeal of the first judgment and it was not void on its face. Mullins, 150 S.W.2d at 84. The court reversed the judgment of the intermediate appellate court and ordered the appeal dismissed. Mullins, 150 S.W.2d at 84. Implicit in this holding and in this disposition is that the appellant needed to perfect a timely appeal from the first judgment and that the appellant's attempted perfection of an appeal from the second judgment was defective. As the trial court in Mullins signed the two judgments less than thirty days apart, it appears that the appellant missed the appellate timetables from the first judgment, which controlled the appellate timetables. Mullins, 150 S.W.2d at 84.
The court in Check held that a valid second judgment restarts the appellate timetables. Check did not consider whether a void second judgment restarts the appellate timetables. See Check, 758 S.W.2d at 756. If Check did the latter, it may be inconsistent with Mullins. Because we hold that Tina and Terry timely perfected their appeals under either the termination judgment or the divorce decree timetable, we need not decide which of the two timetables controls.
The trial court signed the termination judgment on November 10, 1992, and the divorce decree on November 30, 1992. To be timely, a party must file a motion for new trial within thirty days of the date the trial court signs the judgment. Tex.R.Civ.P. 329b(a). On December 3, 1992, both Tina and Terry filed motions for new trial. These motions were timely regardless of which judgment started the appellate timetables.
Both Tina's and Terry's motions for new trial attacked the termination judgment. Neither attacked the divorce decree. We have already held that the termination judgment was valid and that the divorce decree was a nullity. Accordingly, both Tina's and Terry's motions for new trial attacked the substance of the surviving judgment. We hold that the motions for new trial extended the appellate timetables. See Miller v. Hernandez, 708 S.W.2d 25, 27 (Tex.App.Dallas 1986, no writ).[5]
When a party files a timely motion for new trial, the parties have ninety days after the trial court signs the judgment to perfect an appeal. TEX.R.APP.P. 41(a)(1). Under the termination judgment timetable, the deadline for perfecting an appeal was February 8, 1993. Under the divorce decree timetable, the deadline was February 28, 1993.
Tina filed her affidavit of inability to pay on December 20, 1992. As there was no contest to Tina's affidavit, Tina timely perfected her appeal. TEX.R.APP.P. 40(a)(3)(A).
Terry's appeal was not perfected by virtue of Tina timely perfecting her appeal. Because both Tina and Terry are appealing the termination judgment, Terry is not a party adverse to Tina. Because Terry was not a party adverse to Tina, Terry had to perfect his own appeal either jointly with Tina, which did not occur here, or independently of Tina's appeal, which did occur here. See Donwerth v. Preston II Chrysler-Dodge, Inc., 775 S.W.2d 634, 638-39 (Tex.1989);[6]but see Warren v. Triland Inv. Group, 779 S.W.2d 808,809 (Tex.1989) (per curiam); Gilberto Hinojosa & Craig S. Smith, Limited and Cross Appeals in Texas Appellate Practice, DALLAS BAR ASSOCIATION APPELLATE LAW SECTION: PRACTICE BEFORE THE DALLAS COURT OF APPEALS (Feb. 26, 1993).
Terry filed his affidavit of inability to pay on December 14, 1992. Absent a contest and absent a timely order sustaining that contest, Terry's affidavit would have perfected his appeal. A contest to an affidavit of inability to pay must be filed within ten days of the date a contestant receives notice *141 of the affidavit. Tex.R.App.P. 40(a)(3)(C). On December 14, 1992, the district clerk filed a timely contest. After a contest is filed, absent an extension of time, the trial court must both hear and sign an order sustaining the contest within ten days of the date the contest is filed; otherwise the allegations in the affidavit are taken as true. Tex.R.App.P. 40(a)(3)(E). On December 23, 1992, the trial court signed an order, which provided, in pertinent part:
On the 23rd of December, 1992, came to be heard the contest of Terry, Sr.'s Affidavit of Inability to Give Cost Bond.
* * * * * *
After the hearing was concluded ..., the Court found the following:
Terry Azbill, Sr. is a pauper under Rule 40(a)(3)(F), Texas Rules of Appellate Procedure, however Terry Azbill, Sr. can pay a portion of the Cost Bond necessary for perfecting the appeal.
The Court finds that Terry Azbill, Sr. is able to pay the sum of $100.00 as security for the costs of appeal in this case.
It is therefore ORDERED that Terry Azbill, Sr. shall pay the sum of $100.00 prior to the preparation of the statement of facts as security for the costs of appeal in this cause pursuant to 40(a)(3)(F) Texas Rules of Appellate Procedure.
The order neither expressly sustains nor denies the contest. On the one hand, the trial court found that Terry was a pauper. On the other hand, the trial court ordered him to file a cash deposit. The order also appears to set in place a timetable for filing the cash deposit in derogation of the timetable provided by rule 41(a)(2) of the Texas Rules of Appellate Procedure. See TEX.R.APP.P. 41(a)(2). The transcript shows that Terry filed the $100 cash deposit on January 14, 1993.
Assuming that the trial court denied the contest, then Terry's December 14, 1992 affidavit of inability to pay timely perfected the appeal. TEX.R.APP.P. 40(a)(3)(A). As explained above, because the parties' motions for new trial extended the appellate timetables, the parties needed to perfect their appeals by February 8, 1993, under the termination judgment and by February 28, 1993, under the divorce decree.
When a trial court timely sustains a contest to an affidavit of inability to pay (without a finding that the affidavit was filed in bad faith), the appeal bond or the cash deposit in lieu thereof is due the later of the normal appellate deadlines or ten days after the date of the trial court's order sustaining the contest. Templo Ebenezer, Inc. v. Evangelical Assemblies, Inc., 734 S.W.2d 770, 772 (Tex.App.Amarillo 1987, no writ). The trial court signed its order on the contest on December 23, 1992. Assuming the trial court sustained the contest, Terry's cash deposit was due on January 4, 1993, pursuant to rules 41(a)(2) and 5 of the Texas Rules of Appellate Procedure, or by February 8, 1993 (termination judgment), or February 28, 1993 (divorce decree), under rule 41(a)(1) of the Texas Rules of Appellate Procedure. See TEX.R.APP.P. 41(a)(1), (a)(2); Tex.R.App.P. 5. Terry's January 14, 1993 cash deposit was timely under rule 41(a)(1). Assuming that the trial court sustained the district clerk's contest, Terry nevertheless timely perfected his appeal because Terry's cash deposit was timely.
Regardless of whether the trial court sustained or denied the contest and regardless of whether the trial court attempted to extend the appellate timetables in derogation of rule 41(a)(2), we hold that Terry timely perfected his appeal. Accordingly, we do not decide the substantive effect of the trial court's December 23, 1992 order.[7]

*142 TIMELINESS OF THE RECORD
Because we have held that the motions for new trial extended the appellate timetables, the transcript and the statement of facts were due 120 days from the date that the trial court signed the final judgment. Tex. R.App.P. 54(a). Both were due on March 10, 1993, under the termination judgment timetable and, under the divorce decree timetable, on March 30, 1993.
The parties filed the transcript on March 10, 1993. The transcript was timely under either timetable. The parties tendered the statement of facts on April 14, 1993. The statement of facts is late absent a timely motion to extend the time to file it. The parties must file a motion to extend time to file the statement of facts within fifteen days of the last date for filing it timely. TEX. R.APP.P. 54(c). Tina and Terry filed a joint motion to extend time to file the statement of facts on March 2, 1993; their joint motion is timely under either the termination judgment or the divorce decree judgment timetable. An order granting Tina and Terry's joint motion accompanies this opinion.

CONCLUSION
After reviewing the transcript, the Court holds that both Tina and Terry timely perfected their appeals of the termination judgment. The Court also holds that the divorce decree is a nullity. The Court expresses no opinion on how or whether Tina and Terry may correct the error regarding the divorce decree.
NOTES
[1] Tina Azbill captioned her petition for divorce as "Third Party Action in Suit Affecting the Parent-Child Relationship."
[2] Criticized on other grounds. See Webb v. Jorns, 473 S.W.2d 328, 331 (Tex.Civ.App.Fort Worth 1971), rev'd on other grounds, 488 S.W.2d 407 (Tex.1972).
[3] The Fort Worth Court of Appeals criticized both Schell and Thomas on this ground. See Webb, 473 S.W.2d at 331 rev'd on other grounds, 488 S.W.2d 407 (Tex.1972).
[4] Our record reflects Tina filed her divorce petition as a cross-claim in the termination suit. See Neal v. Avey, 853 S.W.2d 707, 709 (Tex.App. Houston [14th Dist.], 1993, writ denied).
[5] The Court expresses no opinion on whether the motions for new trial would have extended the appellate timetables if the divorce decree had replaced the termination judgment.
[6] By amending rule 40(a)(4) in 1990, the Texas Supreme Court deleted the "plain language" upon which that court apparently based Donwerth. See Inman's Corp. v. Transamerica Comm. Fin. Corp., 825 S.W.2d 473, 476 n. 1 (Tex.App.Dallas 1992, no writ).
[7] When reviewing the transcript for timeliness, the Court noted one possible scenario under which Terry failed to timely perfect his appeal: If the Court held that the divorce decree replaced the termination judgment; if the Court held that the parties' motions for new trial did not extend the appellate timetables because their motions did not attack the substance of the divorce decree, see Miller, 708 S.W.2d at 27; if the Court held that the trial court's December 23, 1992 order constituted an order sustaining the district clerk's contest to Terry's affidavit of inability to pay; and if the Court held that the trial court had no jurisdiction to extend the appellate timetables in derogation of rule 41(a)(2); then the appellate timetables would have started on November 30, 1992; Terry would have had to perfect his appeal by no later than January 4, 1993, Tex. R.App.P. 5 & 41(a)(2); and Terry's January 14, 1993 cash deposit in lieu of appeal bond would have been untimely. It is for this reason that the introductory paragraph of this presubmission opinion describes the jurisdictional issue as being whether Terry timely perfected his appeal. However, because the Court has held that the divorce decree is a nullity, it has not reached the merits of the analysis under this scenario. The Court expresses no opinion on whether it would have followed this analysis had it determined the validity of the divorce decree otherwise.