**Jerry L. BERWICK, Appellant,**

v.

**Richard T. WAGNER, Appellee.**

No. 01–09–00834–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 10, 2011.

Austin R. Nimocks, Alliance Defense Fund, Scottsdale, AZ, Cecilia M. Wood, Attorney and Counselor at Law, P.C., Austin, TX, for Appellant.

Ellen A. Yarrell, Houston, TX, Kenneth D. Upton Jr., Lambda Legal Defense & Education Fund, Inc., Dallas, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

SHERRY RADACK, Chief Justice.

Appellant Jerry Berwick appeals the trial court's order registering a California parentage judgment as a child custody determination under section 152.305 of the Texas Family Code. Berwick argues that the California judgment, which was signed pursuant to a stipulation filed by the parties, does not qualify as a child custody determination under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"[1]) because (1) only the pleadings and the parties? stipulation, rather than the actual judgment, expressly address custody, and (2) even if the judgment could otherwise qualify as a custody order, the California court did not have jurisdiction to determine custody before the child

---

1. The UCCJEA is a set of rules for determining which state has jurisdiction to determine custody disputes and has been adopted by 48 states, including Texas and California.

at issue was born.[2]

We affirm the trial court's judgment registering the order.

## STATEMENT OF FACTS

Berwick and appellee Richard Wagner, both men, were in a relationship with each other from 1994 through 2008. They were legally married in Canada in 2003 and registered as domestic partners in California in 2005. They lived together in Houston from 1997 until 2008.

In 2005, the couple entered into a gestational surrogacy agreement with a married woman in California for her to carry a child for them. In March 2005, doctors implanted the woman with embryos formed from Berwick's sperm and ova anonymously donated to both Berwick and Wagner, which resulted in pregnancy.

In September 2005, before the child's birth, Berwick and Wagner filed a Petition to Establish a Parental Relationship with the child ("the Petition") in a California district court.[3] The Petition requested that the California court deem both Berwick and Wagner the unborn child's legal parents, award the couple "legal and physical custody" of the child upon its birth, direct that they would assume financial responsibility for the child, and order their names placed on the child's birth certificate under the parent headings.

Attached to the Petition was a "Stipulation in Support of Application for Judgment" ("the Stipulation") and a proposed judgment. The Stipulation included agreements by Berwick, Wagner, the surrogate, and the surrogate's husband that:

- The parties entered into a surrogacy contract with the intention that Berwick and Wagner would be the child's legal parents on the birth certificate.
- Berwick and Wagner would have sole financial responsibility for the child.
- Berwick and Wagner would gain legal custody of the child immediately upon the child's birth.
- The parties, also, "stipulate[d] to the proposed judgment attached as Exhibit 'A,' . . . ."

Exhibit A was a proposed judgment entitled "Judgment of Paternity." It provided that:

Pursuant to the stipulation filed between the parties, and the evidence presented, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

1. Petitioner Berwick has judgment in that Petitioner Berwick is declared to be a legal parent of any child born to [the surrogate] after March 31, 2005, and before January 31, 2006.

2. Petitioner Wagner has judgment in that Petitioner Wagner is declared to be a legal parent of any child born to [the surrogate] after March 31, 2005, and before January 31, 2006.

3. [The surrogate] is declared *not* to be the mother of any child born to [the surrogate] after March 31, 2005, and before January 31, 2006.

---

2. Berwick additionally contends that, "[e]ven if this Court were to hold that the paternity judgment was properly registered, the judgment is unlikely to be enforceable" on various public policy grounds. We do not address this argument, however, because enforcement is not at issue in this proceeding.

3. California courts are expressly vested with jurisdiction over persons who cause conception with the intent to become legal parents by assisted reproduction in California. CAL. FAM.CODE § 7620(a) (West 2005). And California law expressly allows for parentage actions to be brought, and judgment entered, "before the birth of a child," but judgment is automatically "stayed until the birth of the child." CAL. FAM.CODE § 7633 (West 2005).

4. [The surrogate's husband] is declared *not* to be the father of any child born to [the surrogate] after March 31, 2005, and before January 31, 2006. . . .

6. The hospital where [the surrogate] gives birth to any child after March 31, 2005, and before January 31, 2006, is hereby directed to prepare the original birth certificate in accordance with the terms of this judgment as follows:

 a. Name the child in accordance with the directions given by Berwick or Wagner;

 b. List the legal name of Berwick in the space provided for father . . .

 d. List the legal name of Wagner in the space provided for mother. . . .

IT IS SO ORDERED, ADJUDGED, AND DECREED

On September 29, 2005, the California court signed and dated the parties? proposed judgment ("the California judgment"). The child, C.B.W., was born in California two months later, on December 7, 2005. Berwick and Wagner assumed custody of C.B.W. in California and then brought him to Houston, where they lived together for several years as a family.

## A. The Texas SAPCR proceeding

In 2008, Berwick, the biological parent listed on C.B.W.'s birth certificate as "father," ended his relationship with Wagner. In response, Wagner, the non-biological parent listed on C.B.W.'s birth certificate under the section for "mother," filed a Suit Affecting the Parent–Child Relationship (SAPCR) in Texas. Wagner sought to establish joint managing conservatorship of C.B.W. Berwick counter-claimed, seeking sole managing conservatorship and a finding by the trial court that Wagner did not have standing as a "parent" to seek

custody because he was not biologically-related to C.B.W. These claims remain pending in trial court and are not at issue in this appeal.

## B. The registration proceeding underlying this appeal

In a separate proceeding, but to bolster his standing claim in the SACPR proceeding, Wagner requested that the trial court register the California judgment establishing his parent-child relationship with C.B.W. as a "child custody determination." This request was made under section 152.305(a) of the Texas Family Code, which permits a "child custody determination issued by a court of another state . . . be registered in this state, with or without simultaneous request for enforcement." TEX. FAM.CODE ANN. § 152.305(a) (Vernon 2008). Upon receipt of a registration request under section 153.305(a), the court must serve a copy on certain parties impacted by the order. *Id.* § 152.305(b). If the registration is not timely contested, the foreign judgment is confirmed and enforcement of that order may be sought in the Texas courts. *Id.* § 152.305(c)(3); *see also id.* §§ 152.303, 152.306.

Berwick timely contested the registration, asserting that the California judgment, which does not mention "custody," does not qualify as a child custody determination. Because the parties asserted that the paternity judgment could be relevant to Berwick's challenge to Wagner's standing in the SAPCR proceeding, the trial court consolidated—only for purposes of a hearing and related briefing—the registration and standing issues. On August 21, 2009, following a hearing, the trial court found the California judgment to be a "child custody determination" and ordered it registered pursuant to section

152.305 of the Texas Family Code.[4] Berwick filed this appeal. *See id.* § 152.314 (providing for accelerated appeal).

## ANALYSIS

We must interpret the UCCJEA to determine if the California judgment qualifies as a child custody determination. If it does, we must also decide whether California lacked jurisdiction to enter such a judgment before C.B.W. was born.

## CHILD CUSTODY DETERMINATION

Berwick first argues that the trial court improperly relied upon custody language in the Petition and Stipulation, rather than looking only to the language of the California judgment, in determining that the judgment could be registered as a child custody order. He further argues that, because the California judgment is facially silent as to custody, it cannot be considered a child custody determination.

As an initial matter, we note that while there was discussion at the hearing about whether the custody recitations in the Stipulation were part of the California judgment, the trial court never, as Berwick asserts, conditioned his conclusion that the judgment was a child custody determination on language of the Stipulation. That said, we agree with Berwick that the California judgment's recitation that it was entered "pursuant to" the Stipulation does not incorporate that stipulation's terms by reference. The trial court correctly concluded, however, that the California judgment at issue here is a child custody determination for purposes of registration under section 305 of the UCCJEA.

### INCORPORATION OF THE STIPULATION

#### A. Applicable law

 We construe orders and judgments under the same rules of interpretation as those applied to other written documents. *Azbill v. Dallas Cnty. Child Protective Servs. Unit,* 860 S.W.2d 133, 136 (Tex.App.-Dallas 1993, no writ). Before one document can incorporate a second document, the first document must unmistakably make the second document a part of it. *Id.* A mere reference to the second document is not an incorporation. *Id.* Courts should not give conclusive effect to a judgment's use or omission of commonly employed decretal words, but should instead determine what the court adjudicated from a fair reading of all the judgment's provisions. *McCollough v. McCollough,* 212 S.W.3d 638, 647 (Tex. App.-Austin 2006, no pet.) (quoting *Wilde v. Murchie,* 949 S.W.2d 331, 332 (Tex. 1997)).[5]

#### B. Analysis

---

4. The court also concluded at that hearing that Wagner had standing in the SAPCR litigation as both a "parent" and a "person acting as a parent."

5. The same analysis applies under California law, which construes orders and judgments under the same rules of interpretation as those applied to other written documents. *Hirshfield v. Schwartz,* 91 Cal.App.4th 749, 110 Cal.Rptr.2d 861, 872 (2001). To incorporate an external document by reference, the subject document must contain some clear and unequivocal reference to the fact that the terms of the external document are incorporated. *Amtower v. Photon Dynamics, Inc.,* 158 Cal.App.4th 1582, 71 Cal.Rptr.3d 361, 384 (2008). "[T]he mention of [a document] is not the same as specifically directing the parties' attention to the terms of the external document in a manner that could be construed as eliciting the parties' consent to its separate terms." *Id.* at 384. A court order entered "[b]ased on the Settlement Agreement amongst the parties" does not incorporate the terms of the parties? settlement agreement. *See O'Connor v. Colvin,* 70 F.3d 530 (9th Cir.1995).

Here, the California district court entered judgment "[p]ursuant to the stipulation filed between the parties, and the evidence presented. . . ." Berwick argues that the California judgment's reference to the Stipulation was mere decretal language confirming that the judgment was decided based upon the pleadings and evidence in the case. Wagner does not respond to this argument in his brief.

The phrase "pursuant to" is not equivalent to "incorporated." *Trim v. Daniels,* 862 S.W.2d 8, 10 (Tex.App.Houston [1st Dist.] 1992, writ denied); *see also Caudill v. N. Am. Media Corp.,* 200 F.3d 914, 917 (6th Cir.2000) (holding judgment entered "pursuant to" parties' settlement agreement did not incorporate terms of the settlement agreement). We thus agree with Berwick that the Stipulation's reference to "legal custody" is not incorporated into the judgment, rendering the judgment silent as to the issue of custody.

The inquiry does not end here, however, because Wagner argues that the judgment qualifies as a child custody determination despite the absence of customary custody provisions on the face of the judgment. We agree.

### THE CALIFORNIA JUDGMENT AS A "CHILD CUSTODY DETERMINATION"

#### A. Standard of Review

■ We review the trial court's interpretation of applicable statutes de novo. *Waltenburg v. Waltenburg,* 270 S.W.3d 308, 312 (Tex.App.-Dallas 2008, no pet.) (citing *Bragg v. Edwards Aquifer Auth.,* 71 S.W.3d 729, 734 (Tex.2002)). Our objective is to determine and give effect to the legislature's intent. *Id.* (citing *Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000)). The UCCJEA must be "applied and construed to promote the uniformity of the law among the states that enact it." TEX. FAM.CODE ANN. § 152.001.

#### B. Applicable Law

The UCCJEA provisions adopted by Texas define several of the terms at issue here:

(3) "Child custody determination" means a judgment, decree, or other order of a court providing for *legal custody, physical custody, or visitation with respect to a child.* The term includes permanent, temporary, initial, and modification orders. The term does not include an order relating to child support or other monetary obligation of an individual.

(4) "Child custody proceeding" means a proceeding in which *legal custody, physical custody, or visitation with respect to a child is an issue.* The term includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, *paternity, termination of parental rights,* and protection from domestic violence *in which the issue may appear* . . . .

. . . .

(7) "Home state" means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of the child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with a parent or a person acting as a parent. . . .

(8) "Initial determination" means the first child custody determination concerning a particular child.

. . . .

(11) "Legal custody" means the managing conservatorship of a child.

. . . .

(14) "Physical custody" means the physical care and supervision of a child.

TEX. FAM.CODE ANN. § 152.102 (Vernon 2008) (emphasis added). Substantively identical definitions have been adopted under California law. CAL. FAM.CODE § 3402 (West 2008).[6]

Under the Texas codification of the UCCJEA, Texas courts must recognize and register child custody determinations by courts of other states, provided that either (1) the foreign state court "exercised jurisdiction under statutory provisions substantially in accordance" with the UCCJEA, or (2) the foreign child custody determination "was made under factual circumstances meeting the jurisdictional standards" of the UCCJEA. TEX. FAM.CODE ANN. §§ 152.303(a), 152.305; *Waltenburg v. Waltenburg*, 270 S.W.3d 308, 312 (Tex. App.-Dallas 2008, no pet.).

Under both the California and Texas codifications of the UCCJEA, a court has jurisdiction to make a child's initial custody determination when the custody-determining state is the child's home state either (1) when the action is commenced, or (2) within six months before the initial petition is filed if the child is absent but a parent or person acting as a parent continues to live in the state. *See* CAL. FAM.CODE § 3421(a)(1) (West 2008); TEX. FAM.CODE ANN. § 152.201(a)(1) (Vernon 2008). If neither of these apply, the inquiry focuses on whether the child and a parent have significant ties to the state and whether there is another state where jurisdiction is proper. *See generally* CAL. FAM.CODE § 3421 (West 2008); TEX. FAM.CODE ANN. § 152.201 (Vernon 2008). When there are competing states with proper jurisdiction over a child custody matter, the proceeding first commenced usually has overriding jurisdiction. *See generally* TEX. FAM.CODE ANN. § 152.206 (Vernon 2008).

## C. Analysis

Berwick concedes that section 152.102(4) identifies proceedings for "paternity" and "termination" as examples of a "child custody proceeding" in which custody or visitation issues "may appear," but he contends that a parentage order cannot be a child custody determination under the UCCJEA absent *express* adjudication of custody in the judgment. In response, Wagner argues that the Court should examine the nature of the order. *McCollough*, 212 S.W.3d at 647 ("Courts should ... determine what the trial court adjudicated from a fair reading of all the judgment's provisions."). This particular parentage judgment, according to Wagner, did more than merely establish the paternity of a single parent. Rather, it expressly adjudicated possessory rights to C.B.W. between his presumptive parents (the surrogate and her husband) and the intended parents (Berwick and Wagner).

Applying the plain language of the UCCJEA and the cases interpreting it to the narrow and unique facts of this case, we conclude the trial court correctly recognized the California judgment as a child custody determination because it resulted from proceedings in which "legal custody, physical custody, or visitation [was] an issue" between the presumptive and intended parents. TEX. FAM.CODE ANN. § 152.102 (Vernon 2008). While custody was not disputed between Berwick and Wagner in that proceeding, it was very much at issue with relation to C.B.W.'s surrogate mother and her husband vis a vis C.B.W.'s biological father and domestic partner.

Berwick primarily relies on *In re McMillan*, 265 S.W.3d 918, 918–20 (Tex. App.-Austin 2008, orig. proceeding), for

---

**6.** The only exception is Texas's definition of "legal custody," a term that remains unde- fined in the California version of the UCCJEA.

the proposition that paternity actions are not covered by the UCCJEA. In *McMillan*, there was a pending child custody proceeding in Tennessee, but the Tennessee court would not allow a party claiming paternity of the child to challenge another person's acknowledgement of paternity on file in Texas. 265 S.W.3d at 919. The petitioner thus filed suit in Texas to challenge the acknowledgment of paternity, but affirmatively disclaimed in his Texas pleadings any desire to adjudicate custody matters and expressly acknowledged custody matters were already pending in a Tennessee court. *Id.* at 919–20. On those facts, the Austin Court of Appeals concluded that the parentage proceedings did not "raise custody or visitation issues." *Id.* It accordingly found the proceeding was not a child custody proceeding under the UCCJEA.

Berwick additionally points to several cases from other jurisdictions concluding that paternity adjudications did not include child custody determinations, but these are likewise inapposite. For example, in *Sanchez v. Fernandez*, the Florida court of appeals held that custody was not at issue in a paternity suit because, like in *McMillan*, the petitioner expressly excluded custody issues by acknowledging in his pleadings that possession and custody was proper with the child's mother in Columbia. 915 So.2d 192, 193 (Fla.Dist.Ct.App. 2005). In *Lozano v. McCutcheon*, the Iowa court of appeals held a paternity and support order obtained by the state's Child Support Recovery Unit was not a child custody determination because custody was not mentioned and because a statute in fact expressly prohibited joint adjudication of custody with support issues. 682 N.W.2d 83, 2004 WL 574664, at *1 (Iowa Ct.App. March 24, 2004).[7]

We recognize, as *McMillan* and the cases cited by Berwick from other jurisdictions demonstrate, that not all proceedings related to parentage involve custody. But many do, either expressly or by implication. *C.f. Kiefer v. Touris*, 197 S.W.3d 300, 302 (Tex.2006) (recognizing that trial court order setting aside previous parentage adjudication also set aside custody and support obligations "by implication"). The California proceedings in this case involved none of the specific circumstances that led the courts in the cases cited by Berwick to find that the parentage claims at issue did not involve custody determination.

The cases cited by Wagner recognizing that proceedings to terminate parental rights involve child custody determinations are more analogous here. *See, e.g., In re J.C.B.*, 209 S.W.3d 821, 824 (Tex.App.-Amarillo 2006, no pet.) ("Actions to terminate parental rights fall within the scope of child custody determinations."). The California proceedings did not just involve the limited question of one person's genetic parentage, as in *McMillan*. Instead, the California court allocated parentage and—by necessary implication—custody be-

---

7. In two other out-of-state cases cited by Berwick, the courts looked to statements about custody in the parties' pleadings to determine whether the proceedings involved issues of child custody, which Berwick argues it would have been improper for the trial court to do in this case. *See Greenhough v. Goforth*, 354 Ark. 502, 126 S.W.3d 345, 349 (2003) (holding lawsuit to establish paternity and support was a child custody proceeding because *the petition* stated that petitioner should have custody subject to "reasonable visitation of the respondent"); *Harshberger v. Harshberger*, 724 N.W.2d 148, 157 (N.D.2006) (holding paternity suit did not involve custody until the petitioner *amended pleadings* to include request for custody determination). The last case cited by Berwick—a one-paragraph opinion simply stating the UCCJEA did not apply there because "the sole issue before the court was that of paternity"—does not contain enough details about the underlying facts to be instructive. *Anthony v. Gina*, 52 A.D.3d 1249, 859 N.Y.S.2d 812 (N.Y.App. 4th 2008).

tween the presumptive parents whose rights were terminated and the intended parents who were declared legal parents.

Berwick argues that termination-of-parental-rights cases are inapplicable because (1) a surrogate that is not genetically related to a child does not have legal rights to the child and thus does not have rights to terminate, (2) any rights the surrogate and her husband might have in this case had were terminated by their contract with Berwick and Wagner, not by the California order, and (3) the California court did not follow the procedures under California law for terminating parental rights. But the woman who gives birth to a child in California is presumed to be the mother, CAL. FAM.CODE § 7610 (West 2008), and when she is married, as in this case, her husband is presumed to be the father. CAL. FAM.CODE § 7611(a) (West 2008). It may well be that the lack of genetic relation ultimately deprives a surrogate of rights to a child as measured against the rights of biological and/or intended parents under the relevant laws of a particular state. It does not follow, however, that a judgment terminating presumptive parents' rights in favor of intended parents' rights is not a child custody determination for registration purposes under section 1532.305(a) in the same way an order terminating a genetically related parent would be. Berwick cites no cases making such a distinction, and he does not attempt to reconcile his position with cases holding that suits to extinguish parental obligations premised on the lack of a genetic connection with a child involve child custody determinations. As the court in *Guernsey v. Guernsey* explained in holding that a paternity suit brought by a child's legal father to establish that the child born of his marriage was *not* actually his biological child involved "custody," a suit to undo parental rights is by definition a custody matter:

Mr. Guernsey argues that this is not a custody proceeding and, therefore, he says, the [UCCJEA-predecessor statute] UCCJA ... [is] not applicable. He insists that this case "involves a petition for relief from a judgment, not a modification of it." His argument is one of semantics. Mr. Guernsey, who has legal custody of the child, filed a petition asking the trial court relieve him of that custody. Such a request involves a "custody proceeding," no matter what name is given to the petition. The UCCJA ... appl[ies] to interstate actions to determine who will have custody. It is logical to apply the UCCJA when determining who will not have custody. Mr. Guernsey's request that he be declared not to be the father of the minor child is a custody-determination proceeding of the most drastic kind.

794 So.2d 1108, 1110 (Ala.Civ.App.1998) (citations omitted).

Finally, we are unpersuaded by Berwick's argument that the judgment must expressly mention the word "custody" to qualify as a child custody determination. As authority for this proposition, Berwick cites *Richardson v. Green*, 677 S.W.2d 497 (Tex.1984), a supreme court case recognizing that custody and termination proceedings are different for purposes of that court's appellate jurisdiction, and *Williams v. Knott*, 690 S.W.2d 605 (Tex.App.-Austin 1985, no writ), a case applying *Richardson* to hold that a termination-of-parental-rights suit was not a child-custody proceeding under the UCCJEA. *Williams'* analysis has since been rejected by several courts distinguishing *Richardson* on its facts. *See, e.g., White v. Blake*, 859 S.W.2d 551, 562 (Tex.App.-Tyler 1993, orig. proceeding) ("[S]everal out-of-state appellate courts have declined to follow this portion of the holding in the *Williams* opinion, and ... we likewise decline to

follow it.") Importantly, since *Williams* was decided, "termination" suits were added to the list of specifically enumerated types of proceedings that may involve custody issues.[8] As the San Antonio Court of Appeals has recognized:

> All fifty states have enacted some version of the [UCCJEA-predecessor] UCCJA, and virtually all have interpreted it to apply to suits involving the termination of parental rights and adoption, including revocation of consent, because suits of this nature inevitably affect custody and visitation, and broad application of the uniform act promotes its underlying purposes.

*In re Lambert*, 993 S.W.2d 123, 128 (Tex. App.-San Antonio 1999, orig. proceeding).

■ We decline to adopt Berwick's approach requiring specific words to render a judgment a child-custody determination. As a general proposition, "there can be no doubt that the custody rights of a parent are affected by the termination of his or her parental rights, since these rights are severed completely and permanently." *White*, 859 S.W.2d at 561. This is true whether the parent is the presumptive or biological parent, and whether "custody" is expressly or implicitly addressed. We glean no meaningful difference between a judgment that terminates parental rights and appoints adoptive parents the child's "managing conservators," *Lambert*, 993 S.W.2d at 125 (which Berwick concedes is a custody proceeding), and the California judgment here that extinguished any rights held by C.B.W.'s presumptive parents and appoints Berwick and Wagner "legal parents." *E.g., Miller–Jenkins v. Miller–Jenkins*, 49 Va.App. 88, 637 S.E.2d

330, 336 (2006) ("Whatever semantical machinations are involved, any common understanding of the term parental rights' includes the right to custody . . . and visitation." (citations omitted)). Because the California order both terminates the C.B.W.'s presumptive parental rights and grants exclusive parental rights and—by implication—custody to Berwick and Wagner, the trial court correctly concluded it qualifies as a "child custody determination" for purposes of section 152.305.

### JURISDICTION

■ Berwick next argues that the trial court should not have registered the California judgment because he contends the California court lacked jurisdiction to enter an order containing a custody determination before C.B.W. was born. In support, he points to the Texas and California codifications of the UCCJEA defining a "child" as "an individual who has not yet attained 18 years of age." CAL. FAM.CODE § 3402(b) (West 2008); TEX. FAM.CODE ANN. § 152.102(2) (Vernon 2008). He also cites *Waltenburg*, a Dallas Court of Appeals case holding that "a court in a state that has adopted the UCCJEA cannot exercise jurisdiction over a custody claim asserted regarding an unborn child." 270 S.W.3d at 318.

Wagner responds by noting that California law provides expressly that parentage suits may be commenced before a child is born, and that any judgment is stayed until birth. *See* CAL. FAM.CODE § 7633 (West 2008); *see also Kristine H. v. Lisa R.*, 37 Cal.4th 156, 33 Cal.Rptr.3d 81, 117 P.3d 690, 695–96 (2005) (rejecting argument that trial court lacked subject-matter

---

**8.** The definition of "custody proceeding" in the UCCJEA's predecessor statute did not expressly identify "termination" or "paternity" as types of actions that may involve custody. It was defined as "a proceeding in which custody determination is one of several issues, such as an action for divorce or separation, and includes child neglect and dependency proceedings." UCCJA § 11.52(3).

to enter parentage order before child was born). He further contends *Waltenburg* is distinguishable on its facts and does not stand for the blanket proposition that a judgment signed before the birth of a child cannot be recognized under the UCCJEA as a valid child custody determination. Finally, Wagner points to several cases, including a California case, in which courts have exercised jurisdiction under the UCCJEA before a child is born, but reserved the jurisdictional forum analysis until after the child's birth. *See Haywood v. Superior Court,* 77 Cal.App.4th 949, 92 Cal. Rptr.2d 182, 186–87 (2000); *Gullett v. Gullett,* 992 S.W.2d 866, 870 (Ky.App.1999).

Berwick and Wagner filed their Petition in September 2005, and the California judgment of paternity was signed that same month. C.B.W. was not born until December 2005. Thus, it is undisputed that C.B.W. was not yet born when the Petition was filed and the California judgment was signed.

While the *Waltenburg* opinion holds that the "UCCJEA does not apply to unborn children," it was decided on different facts. We are not persuaded that its primary reasoning applies here. In that case, a married couple who resided in Arizona separated while the wife was pregnant, and she moved to Texas before her child was born. 270 S.W.3d at 311. Her husband then filed for divorce in Arizona, seeking custody of their unborn child. *Id.* The child was born in Texas and never lived in Arizona. *Id.* After the child was born, the mother filed her own divorce suit in Texas, likewise seeking custody. *Id.* The Texas court dismissed the wife's divorce action in deference to the father's pending Arizona action in which he requested custody. *Id.* at 312. The Dallas Court of Appeals reversed, holding that the trial court erred in dismissing the Texas suit because the "text of the UCCJEA

precludes its application to unborn children" and, thus, the Arizona court never properly obtained jurisdiction over the husband's custody claim that was filed before the child was born. *Id.* at 317. Alternatively, the *Waltenburg* court reasoned, "[e]ven if we determined the Arizona court's jurisdiction as of the date [the child] was born—instead of the date Father filed suit—our conclusion that the Arizona court lacked jurisdiction over Father's custody claim does not change" because Texas immediately became the child's home state when it was born. *Id.* at 318.

As the *Waltenburg* court noted, interpreting the UCCJEA to permit a party to file a pre-birth suit so as to trump any post-birth proper jurisdiction of another state would run counter to the UCCJEA's preference for home-state jurisdiction. *Id.* ("[A] party could file suit pre-birth under the UCCJEA provision authorizing jurisdiction when 'no other court has jurisdiction,' and use the 'simultaneous proceeding' provision to control, post-birth, whether the child's home state can ever exercise that 'priority' jurisdiction"). For that reason, the court did not allow the pre-birth location of an unborn child to establish a jurisdictional connection to a state where the child had never lived. We agree such a result would be contrary to the UCCJEA's provisions prioritizing home-state jurisdiction. We do not, however, read *Waltenburg*'s refusal to recognize UCCJEA orders entered pre-birth simply because the petition is filed (or the judgment entered) before the child is born so broadly as to include cases where the court otherwise has proper jurisdiction over the matter upon the child's birth. In cases in which the pre-birth suit and the "home state" of the child are one and the same, courts have recognized that UCCJEA petitions can be filed pre-birth with the jurisdictional analysis reserved for

post-birth (if there is an issue at that point about jurisdictions or competing forums). And Texas law expressly recognizes that certain types of UCCJEA proceedings—such as parental-rights-termination cases—can be commenced before the birth of a child. *See generally* TEX. FAM.CODE ANN. § 161.102 (Vernon 2008) ("A suit for termination may be filed before the birth of a child"); *In re J.C.B.*, 209 S.W.3d 821, 822–23 (Tex.App.-Amarillo 2006, no pet.) (recognizing parental-right-termination case as covered by the UCCJEA).

By statute, Texas law permits registration of a foreign custody order if the foreign state (1) "exercised jurisdiction under statutory provisions substantially in accordance" with the UCCJEA or (2) the "factual circumstances" meet the UCCJEA's jurisdictional standards. TEX. FAM.CODE ANN. § 152.303(a) (Vernon 2008). Thus, if a UCCJEA judgment is signed as to an unborn child and the circumstances are such upon the child's birth that the court has sufficient jurisdictional ties, then recognizing that judgment as a child custody determination for registration purposes is proper, as the trial court found.

Here, the California court entered judgment before C.B.W. was born, but under California law, that order was stayed until his birth. Jurisdiction attached upon the child's birth in California. Berwick has not argued that California jurisdiction was not proper immediately upon C.B.W.'s birth, and no other state was competing for jurisdiction over C.B.W. at that point. We hold, on these facts, that the California court's judgment was a proper exercise of its jurisdiction under California law.

### CONCLUSION

The trial court properly registered the California judgment as a child custody de-

termination under section 152.305. We affirm the trial court's judgment.