**In re Kevin and Traci LAMBERT, Relators.**

No. 04–98–00772–CV.

Court of Appeals of Texas, San Antonio.

Jan. 29, 1999.

Rehearing Overruled April 27, 1999.

Robinson C. Ramsey, Soules & Wallace, P.C., San Antonio, Grady L. Roberts, Jr., Law Office of Grady L. Roberts, Jr., Pearsall, for Appellant.

Oscar C. Gonzalez, Eric Turton, Linda Trene Perez, Oscar C. Gonzalez, Inc., San Antonio, for Appellee.

Before TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice and SARAH B. DUNCAN, Justice.

## OPINION

SARAH B. DUNCAN, Justice.

In this original proceeding, we hold the Texas version of the Uniform Child Custody Jurisdiction Act (the TUCCJA) does not permit the trial court to exercise jurisdiction over the bill of review petition brought by two former parents seeking to set aside the final judgment terminating their parental rights. By the time the petition was filed, the termination judgment was almost six months old, the child's home state was not Texas, neither of her parents or any person acting as her parent lived in Texas, and her contacts with Texas were distant and minimal. We therefore conditionally issue the requested writs of mandamus and prohibition.

### FACTUAL AND PROCEDURAL BACKGROUND

Before Baby Girl Adams was born, her biological parents, Rebecca Adams and Jason Quiroga, both Texas residents, decided to place her in an open adoption, and they selected Virginia residents Kevin and Traci Lambert to be her adoptive parents. Baby Girl Adams thus left the hospital with the Lamberts the day after her birth and lived with them in their hotel in Texas for the first week of her life. She then traveled with the Lamberts to their home in Virginia, where they have lived together as a family ever since.

The Lamberts have been Baby Girl Adams' managing conservators since three days after her birth as a result of a judgment rendered by the 73rd Judicial District Court of Bexar County, Texas. This judgment, which was not appealed, terminated the parent-child relationships between Baby Girl Adams, Adams, and Quiroga and appointed the Lamberts her managing conservators. However, approximately five months after the judgment was signed, Adams and Quiroga petitioned the trial court to set the termination decree aside and appoint them managing conservators. Adams and Quiroga also asked to be appointed temporary managing conservators, and the last page of their petition contained a "fiat," signed by a visiting judge, J.F. Clawson, setting a "hearing on Temporary Orders" and ordering the Lamberts to "produce said child before the court at the hearing."

The parties' attorneys agreed to a one-week postponement of the hearing, but they disagreed as to the continued effectiveness of that part of the "fiat" requiring the Lamberts to produce Baby Girl Adams at the hearing. Therefore, before the hearing, the Lamberts moved to quash that part of the order and to dismiss the conservatorship issue for lack of jurisdiction. At the hearing, however, Judge Gabriel declined to rule not only on the Lam-

berts' motions but also on the now-married Quirogas' request for temporary orders. Judge Gabriel instead announced he would carry these motions with the case. Then, somewhat inexplicably, the hearing on the Quirogas' request for temporary orders appears to have become, at least to some extent, a hearing on the merits of their petition to set aside the termination judgment:

> THE COURT: So, I'd rather just proceed with the hearing, and if something is not correct, then certainly I'm not going to grant it.
>
> LAMBERTS' ATTORNEY: On the bill of review question?
>
> THE COURT: Yes, sir. Whatever motion we have today.
>
> QUIROGAS' ATTORNEY: We are ready to proceed.

The Quirogas' attorney then proceeded to put on evidence relating to the merits of their petition, apparently in the belief he was proceeding on a preliminary "meritorious defense" hearing—a confusing irregularity in which the Lamberts' attorney apparently acquiesced after unsuccessfully trying to explain their answer was not yet even due.

After two days of testimony, Judge Gabriel recessed the hearing until a later date, stating that, although he had not yet decided the merits of the Quirogas' petition, this was an open adoption and the resumption of the hearing would be a good time for the Quirogas to see Baby Girl Adams. At the subsequent rescheduling hearing, the Lamberts' new attorney objected to resuming the hearing on temporary orders because "the Court is without authority to issue temporary orders in a bill of review proceeding until such time as the Court has set aside, or until such time as there has been a ruling that the bill of review should be granted." In response, Judge Gabriel stated:

> Here's the problem. We had that hearing and we had Judge Clawson testify. And I didn't have them bring the baby back the next day. We went

through two days into the hearing. But I am being told that this whole thing, this was an open adoption.

> And since we are going to re-schedule this hearing, I asked—I went ahead and asked the Lamberts to go ahead and bring the child, so whatever happens, at least this family can see the child while we are here. So, that order still stands. I just want to finish the hearing. I didn't know you all wanted to delay it this long. I mean, we went to Friday evening.

After the hearing concluded, Judge Gabriel signed an order requiring the Lamberts "to produce Baby Girl Adams ... before the 131st Judicial District Court of Bexar County Texas" when the hearing resumed less than two weeks later.

In response to Judge Gabriel's order, the Lamberts petitioned this court for writs of mandamus and prohibition to (1) require the trial court to withdraw that part of its order requiring them to produce Baby Girl Adams when the hearing resumes and to prohibit it from ordering the Lamberts to produce her in the future and (2) to prohibit the trial court from conducting any further proceedings in the underlying case and to require the court to dismiss the case for lack of jurisdiction or, alternatively, to prohibit the trial court from conducting a hearing of the conservatorship issue. The Lamberts also moved for emergency temporary relief because Judge Gabriel declined to stay his order. We granted the Lamberts' motion and stayed the underlying proceeding to preserve our jurisdiction to decide the issues raised in their petition.

## PREREQUISITES TO RELIEF

 "A writ of prohibition directs a lower court to refrain from doing some act while a writ of mandamus commands a lower court to do some act." *Tilton v. Marshall*, 925 S.W.2d 672, 676 n. 4 (Tex. 1996) (orig.proceeding). "The same principles control the use of both writs when ...

they are invoked to correct the unlawful assumption of jurisdiction by an inferior court." *Id.* Accordingly, either writ is an appropriate means to require a trial court to vacate a void order arising out of an erroneous assertion of jurisdiction under the TUCCJA. *See Geary v. Peavy,* 878 S.W.2d 602, 604–05 (Tex.1994) (per curiam) (treating TUCCJA jurisdiction as subject matter jurisdiction); *In re S.A.V.,* 837 S.W.2d 80, 87 (Tex.1992) (same). In *Geary,* the court held the "unique and compelling circumstances" in that case mandated application of the *Dikeman* rule, which relieves the relator of the burden to show his remedy by appeal is inadequate. *Geary,* 878 S.W.2d at 603; *see Dikeman v. Snell,* 490 S.W.2d 183, 186 (Tex.1973). Whether the *Dikeman* rule would apply in the absence of similarly "unique and compelling circumstances" was thus left undecided. *Geary,* 878 S.W.2d at 603.

■ Recently, the supreme court resolved the issue left open in *Geary* in favor of the *Dikeman* rule. *See In re Union Pacific Resources Co.,* 969 S.W.2d 427, 428 (Tex.1998). Accordingly, a writ of mandamus may issue to require a trial court to dismiss a proceeding over which it does not have subject matter jurisdiction under the TUCCJA without requiring the relator to demonstrate the inadequacy of his appellate remedy. *In re Jeffries,* 979 S.W.2d 429, 433 (Tex.App.—Waco 1998, orig. proceeding)

### STANDARD OF REVIEW AND PERTINENT RULES OF STATUTORY CONSTRUCTION

Subject matter jurisdiction and statutory interpretation present questions of law. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998), *petition for cert. filed,* 67 U.S.L.W. 3149 (U.S. Aug. 6, 1998) (No. 98–249); *Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 437 (Tex. 1997). With respect to questions of law, "[a] trial court has no 'discretion'. . . . Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ." *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). We therefore determine de novo whether the TUCCJA permits the trial court to exercise jurisdiction over the Quirogas' suit. *See Mayhew,* 964 S.W.2d at 928; *Mitchell Energy,* 943 S.W.2d at 437.

In interpreting statutes, we are guided by the Texas Code Construction Act and the common law rules of statutory construction. *See* TEX. GOV'T CODE ANN. § 311.003 (Vernon 1998). Therefore, "our primary objective is to give effect to the Legislature's intent." *Mitchell Energy,* 943 S.W.2d at 438. This overarching goal of effectuating legislative intent implicates several secondary rules of construction when interpreting the TUCCJA. First, we construe the TUCCJA in the context of the Texas Family Code, presuming "the entire statute is intended to be effective." TEX. GOV'T CODE ANN. § 311.021(2). Similarly, we give words their plain meaning unless they are given a particular meaning by statutory definition or otherwise. *Id.* § 311.011. Finally, we strive to construe the TUCCJA "to effect its general purpose to make uniform the law of those states that enact it." *Id.* § 311.028.

### WAIVER

■ Before turning to the merits of the Lamberts' petition, we must first address the Quirogas' contention that the Lamberts waived their jurisdictional complaint. "Subject matter jurisdiction is essential to the authority of a court to decide a case." *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 443 (Tex. 1993). Therefore, contrary to the Quirogas' argument, a lack of subject matter jurisdiction "cannot be waived." *Id.* at 444.

### APPLICABILITY OF THE TUCCJA

■ The Quirogas argue the TUCCJA applies to their request to be appointed managing conservators but not their petition for a bill of review to set aside the

termination decree. The Lamberts, on the other hand, contend the TUCCJA applies to both issues. We therefore begin our analysis with the applicability of the TUCCJA.

All fifty states have enacted some version of the UCCJA, and virtually all have interpreted it to apply to suits involving the termination of parental rights and adoption, including revocation of consent, because suits of this nature inevitably affect custody and visitation, and broad application of the uniform act promotes its underlying purposes. *See, e.g., In re L.S.,* 943 P.2d 621, 623 (Okla.1997) (citing cases); *In re M.C.S.,* 504 N.W.2d 322, 324–26 (S.D.1993) (discussing cases); *see generally* Greg Waller, *When the Rules Don't Fit the Game: Application of the Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act to Interstate Adoption Proceedings,* 33 HARV. J. ON LEGIS. 271, 285–86 (1996). *But see State ex rel. R.N.J.,* 908 P.2d 345, 348–49 (Utah App.1995); *In re Johnson,* 415 N.E.2d 108, 110 (Ind.App.1981); Herma Hill Kay, *Adoption in the Conflict of Laws: The UAA, Not the UCCJA, Is the Answer,* 84 CAL. L.REV. 703 (1996). Similarly, the Michigan Court of Appeals has applied that state's version of the UCCJA to a proceeding seeking to enjoin enforcement of or modify an order setting aside a termination decree. *In re Clausen,* 199 Mich.App. 10, 501 N.W.2d 193 (Mich.App.), *aff'd on other grounds,* 442 Mich. 648, 502 N.W.2d 649, 657 (Mich.1993).

The Texas Courts of Appeals have followed suit, holding the TUCCJA applies to suits seeking to terminate parental rights. *White v. Blake,* 859 S.W.2d 551, 561–63 (Tex.App.—Tyler 1993, orig. proceeding); *see also Arteaga v. Texas Dept. of Protective & Regulatory Servs.,* 924 S.W.2d 756, 759–60 (Tex.App.—Austin 1996, writ denied) (following *White* ). *But see Williams v. Knott,* 690 S.W.2d 605, 608 (Tex.App.—Austin 1985, no writ) ("actions to terminate parental rights are not child custody cases").We ultimately reach the same conclusion, holding the TUCCJA applies to both the Quirogas' petition to set aside the termination decree and their request to be appointed managing conservators. But our reasoning differs somewhat from that of our sister courts.

By its terms, the TUCCJA appears to apply only to determinations regarding managing conservatorship of and visitation with a child. *See* TEX. FAM.CODE ANN. §§ 152.003(a) (Vernon 1996) ("A court of this state that is competent to decide child custody matters has jurisdiction to make a child custody determination . . . ."), 152.002(2) (defining "custody" as "managing conservatorship of a child"), 152.002(3) (defining "custody determination" as a court decision, order, or instruction that "provid[es] for the custody of a child, including visitation rights . . . ."); *see also id.* § 102.012(a), (b) (recognizing the TUCCJA may apply to and limit a trial court's authority to decide only a portion of a suit); *Worden v. Worden,* 148 Tex. 356, 224 S.W.2d 187, 189 (1949) ("The powers of the district courts to award custody have been held to be independent of and superior to the powers of county courts, under Article 5, Section 16 of the Constitution. . . .").

However, a much broader application of the TUCCJA is indicated by section 102.011(a) of the Texas Family Code, which provides a trial court "may exercise status or subject matter jurisdiction over the *suit* as provided by [the TUCCJA]." TEX. FAM.CODE ANN. § 102.011(a) (emphasis added). "Suit," in this context, "means a suit affecting the parent-child relationship" or, in common parlance, a SAPCR. *Id.* § 101.031. SAPCRs include suits "in which the appointment of a managing conservator or . . . establishment . . . of the parent-child relationship is requested." *Id.* § 101.032(a).

The Quirogas' suit asks the trial court to appoint them temporary managing conservators, to establish parent-child relationships between them and Baby Girl Adams by setting aside the termination decree,

and then to appoint them Baby Girl Adams' permanent managing conservators. We therefore hold the Quirogas' suit is a SAPCR and, consequently, the trial court's exercise of jurisdiction over the issues raised by the suit is governed by the TUC-CJA. *See id.* §§ 101.032(a), 102.011(a).

## SUBJECT MATTER JURISDICTION UNDER THE TUCCJA

Like the uniform act, the TUCCJA provides four bases for a trial court's exercise of jurisdiction: (1) "home state" jurisdiction, (2) "significant connection" jurisdiction, (3) "emergency" jurisdiction, and (4) default jurisdiction. *Id.* § 152.003(a)(1)–(4); *see, e.g., Stubbs v. Weathersby,* 320 Or. 620, 892 P.2d 991, 994 (Or.1995). Unlike the uniform act, however, the TUCCJA also provides a fifth basis for a trial court's exercise of jurisdiction: "continuing jurisdiction." TEX. FAM.CODE ANN. § 152.003(d). We review each in turn.

### *Home State Jurisdiction*

■ The Lamberts contend Baby Girl Adams' home state was Virginia by the time the Quirogas filed their petition, while the Quirogas contend the trial court is entitled to exercise home state jurisdiction because Texas was Baby Girl Adams' home state when the termination suit was filed, no other state had become her home state by the time they filed their petition, and her parents remained residents of Texas. We disagree with both contentions.

The trial court would be permitted to exercise home state jurisdiction if, when the Quirogas filed the underlying suit: (1) Texas was Baby Girl Adams' home state, *id.* § 152.003(a)(1)(A); or (2) within the previous six months, Texas had been Baby Girl Adams' home state, she was absent from Texas because she was removed or retained by a person claiming custody, and "a parent or person acting as parent" continued to live in Texas. *Id.* § 152.003(a)(1)(B).

Texas was not Baby Girl Adams' home state when the Quirogas filed the underlying proceeding. She had not then lived in Texas "from birth," *id.* § 152.002(6), and her absence from Texas since one week after her birth was clearly not "temporary." *See id.* Nor by that time were the Quirogas Baby Girl Adams' parents or persons acting as her parents. The Quirogas ceased to be her parents for purposes of the Texas Family Code upon the rendition of the termination decree, *see id.* § 101.024, and they ceded the role of acting as parents when they released Baby Girl Adams' physical custody to the Lamberts the day after her birth. *See id.* § 152.002(10). Virginia was also not Baby Girl Adams' home state when the Quirogas filed the underlying suit. She had not lived "from birth" in Virginia, and her presence in Texas for the first week of her life was not an "absence" from Virginia since she had never been there. *See Grimes v. Grimes,* 706 S.W.2d 340, 342 (Tex.App.—San Antonio 1986, writ dism'd).

The undisputed evidence, when viewed in light of the unambiguous provisions of section 152.003(a)(1), establishes Baby Girl Adams did not have a home state when the underlying proceeding was commenced. The trial court was therefore not authorized to exercise home state jurisdiction.

### *Significant Connection Jurisdiction*

■ The Quirogas also contend the trial court is authorized to exercise significant connection jurisdiction. We again disagree.

The trial court would be permitted to exercise significant connection jurisdiction if:

(1) it appeared no other state had home state jurisdiction; and

(2) it was in Baby Girl Adams' best interest for a Texas court to assume jurisdiction because:

(a) Baby Girl Adams and at least one contestant had a significant con-

nection—other than mere physical presence—with Texas; and

(b) Texas was a repository of substantial evidence concerning her present or future care, training, and personal relationships.

TEX. FAM.CODE ANN. § 152.003((a)(2).[2] We construe this provision in light of the Uniform Commissioners' comment regarding significant connection jurisdiction under the UCCJA:

> Paragraph (2) perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed in section 1. The paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. *But its purpose is to limit jurisdiction rather than to proliferate it.* The first clause of the paragraph is important: jurisdiction exists only if it is in the child's interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. *The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state.* The submission to a forum ... is not sufficient without additional factors establishing closer ties with the state.

U.C.C.J.A. § 3 cmt. (1988) (citing Homer Clark, DOMESTIC RELATIONS 578 (1968)) (emphasis added).

By the time the Quirogas filed the underlying proceeding, Baby Girl Adams had lived all but one week of her life with the Lamberts in Virginia. As a result, her connections with Texas were both distant and minimal: she had been born in Texas six months earlier, lived here in a hotel for seven days with the Lamberts, and, as far as the record reveals, never returned; a Texas court rendered the judgment terminating her relationships with her biological parents, both Texas residents; and her former parents continued to live in Texas. In contrast, the only family Baby Girl Adams had ever known was the Lamberts, and the only home she had ever known was their home in Virginia. Consequently, virtually all of the evidence regarding her present and future care, training, and personal relationships was in Virginia.

In short, Baby Girl Adams' maximum contact was with the State of Virginia and Virginia residents, and it was the State of Virginia and Virginia residents that had "optimum access" to information regarding her and her family. There is therefore no evidence indicating it would be in Baby Girl Adams' best interest to have her custody decided by a Texas court. The trial court was thus not authorized to assert substantial connection jurisdiction. *See Brown v. Brown*, 847 S.W.2d 496, 504 (Tenn.1993) (noting the Hawaii court's assertion of substantial connection jurisdiction was not supported by findings of fact or the record, which established the child's only contacts with Hawaii were her birth and residence there for the first five months of her life, and concluding the Hawaii court's assertion of jurisdiction "appears to have produced exactly the kind of interstate conflict that the UCCJA and the PKPA were intended to prevent").[3]

---

2. Unlike the uniform act but like the Parental Kidnaping Prevention Act, 28 U.S.C.A. § 1738A, the TUCCJA does not permit an exercise of significant connection jurisdiction if another state has home state jurisdiction. *See* TEX. FAM.CODE ANN. § 152.003(a)(2); *Coots v. Leonard*, 959 S.W.2d 299, 302–303 n. 1 & accompanying text (Tex.App.—El Paso 1997, no writ) (quoting Sampson & Tindall, TEXAS FAMILY CODE ANNOTATED § 152.003 (1997) and noting "[t]he National Conference of Commissioners on Uniform State Laws has recently voted to amend the model [UCCJA] ... [to] give[ ] priority to home state status").

3. *See also In re C.L.W.*, 467 So.2d 1106, 1110 (Fla.Dist.Ct.App.1985) (holding birth is not sufficient to confer substantial connection jurisdiction). *But see In re B.B.R.*, 566 A.2d 1032, 1039 n. 23 (D.C.1989) (disagreeing with *C.L.W.* and distinguishing it because *C.L.W.*'s biological mother consented to adoption,

### Emergency Jurisdiction

■ A trial court is permitted to exercise emergency jurisdiction if "the child is physically present in this state" and an emergency necessitates an assumption of jurisdiction by a Texas court. *See* TEX. FAM.CODE ANN. § 152.003(a)(3)(B). Neither condition was satisfied here.

### Default Jurisdiction

■ Default jurisdiction exists if "it is in the best interest of the child that the court assume jurisdiction," and it appears either that no other state would have home state, significant connection, or emergency jurisdiction or that another state has determined Texas is the more appropriate forum for a custody determination and has therefore declined to exercise jurisdiction. *Id.* § 152.003(a)(4). Here, because Virginia would unquestionably have significant connection jurisdiction, the trial court is not permitted to exercise default jurisdiction.

### Continuing Jurisdiction

■ Finally, the Quirogas argue the trial court is properly exercising its continuing jurisdiction under section 152.003(d) of the TUCCJA. We again disagree.

Section 152.003(d) provides:

Except on written agreement of all the parties, a court may not exercise its continuing jurisdiction to modify custody if the child and the party with custody have established another home state unless the action to modify was filed before the new home state was acquired.

*Id.* § 152.003(d). Subsection (d) might appear merely to constrain a trial court's exercise of jurisdiction to modify custody after a child has acquired a new home state. But it has also been interpreted to provide an affirmative basis for a trial court to exercise its continuing jurisdiction over visitation and support issues so long as one contestant continues to reside in Texas. *See, e.g., Coots v. Leonard,* 959 S.W.2d 299, 302–03 (Tex.App.—El Paso 1997, no writ); *accord McLain v. McLain,* 569 N.W.2d 219, 223 (Minn.Ct.App.1997).

Continuing jurisdiction is acquired by the court rendering the "final order" in an original SAPCR. TEX. FAM.CODE ANN. § 155.001(a). Once acquired, continuing jurisdiction may be exercised "to modify [the] order regarding managing conservatorship, possessory conservatorship, possession of and access to the child, and support of the child." *Id.* §§ 155.003(a), 156.001. Continuing jurisdiction is thus not authorized to set aside a termination decree, which, unlike a custody order, is not subject to modification because it is "complete, final, irrevocable. It divests for all time the parent and child of all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit." *Wiley v. Spratlan,* 543 S.W.2d 349, 352 (Tex.1976) (citing the predecessor of TEX. FAM.CODE ANN. § 161.206); *see Baggett v. State,* 541 S.W.2d 226, 227–28 (Tex.Civ.App.—Tyler 1976, no writ) (holding the juvenile court correctly dismissed biological father's motion to modify termination order).

Contrary to the Quirogas' argument, "the rights, liabilities and status that were established by the [termination decree]" are not affected by "[t]he mere filing of a petition for a bill of review." *Rogers v. Searle,* 533 S.W.2d 440, 443 (Tex.Civ. App.—Corpus Christi 1976, no writ). Rather, "[t]he possibility that a judgment previously entered may be set aside, and a new judgment, based on the evidence

---

while B.B.R.'s biological mother merely signed a release permitting the hospital to release B.B.R. to the prospective adoptive parents but "retain[ing] all parental rights to ... custody and control" and expressly stating it was "not a relinquishment of consent for adoption"). Our research has not revealed a case deciding precisely the issue presented here, *i.e.,* whether a child has a substantial connection with the state in which she was born and lived for a short period of time before her relationships with both biological parents were terminated in a final, unappealed judgment.

heard on the bill of review, might be entered, does not destroy the finality of the prior judgment." *Id.* In short, the termination decree is not subject to modification; it binds the Quirogas and the trial court unless and until it is set aside in a successful direct or collateral attack.[4] Consequently, the trial court is not permitted to exercise its continuing jurisdiction to consider the validity of or set aside the termination decree.

■ Nor is the court authorized to exercise its continuing jurisdiction to appoint former parents, like the Quirogas, as managing conservators. Former parents do not have standing to invoke the trial court's continuing jurisdiction over managing conservatorship issues. *Glover v. Moore*, 536 S.W.2d 78, 79–80 (Tex.Civ. App.—Eastland 1976, no writ). Nor do they have a right to visitation. *Ybarra v. Texas Dept. of Human Servs.*, 869 S.W.2d 574, 576 (Tex.App.—Corpus Christi 1993, no writ). Consequently, the trial court may not exercise its continuing jurisdiction to consider or grant the Quirogas' request to be appointed managing conservators. *Glover*, 536 S.W.2d at 79–80 (holding the trial court correctly dismissed biological mother's post-termination motion to modify conservatorship because she "has no justiciable interest in the subject matter in litigation"); *see Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443–46 (Tex.1993) (holding standing is a component of subject matter jurisdiction).

Neither the Quirogas' petition to set aside the termination decree nor their request to be appointed managing conservators invoked or authorized the trial court to exercise its continuing jurisdiction to modify its custody decree appointing the Lamberts managing conservators of Baby Girl Adams.

### CONCLUSION

The Texas version of the Uniform Child Custody Jurisdiction Act governs the trial court's exercise of jurisdiction over the Quirogas' petition for a bill of review to set aside the judgment terminating their parental rights, as well as their request to be appointed managing conservators. When viewed in light of the TUCCJA, the undisputed evidence establishes the trial court cannot exercise home state, substantial connection, emergency, default, or continuing jurisdiction. Indeed, for a Texas court to exercise jurisdiction on this record would undermine the purposes of the uniform act and threaten "exactly the kind of interstate conflict that the UCCJA and the PKPA were intended to prevent." *Brown*, 847 S.W.2d at 504. We therefore hold the TUCCJA does not permit the trial court to exercise jurisdiction over the Quirogas' suit. As a result, we do not address the Quirogas' argument that the trial court's order was permissible under the Interstate Compact on the Placement of Children. *See* TEX. FAM.CODE ANN. § 162.102.

Because the trial court's assertion of jurisdiction over the Quirogas' suit contravenes the Texas version of the Uniform Child Custody Jurisdiction Act, we conditionally issue the requested writs of man-

---

4. A direct attack seeks to correct an erroneous judgment and is made by postjudgment motion, ordinary or restricted appeal or, if the time for an appeal has expired, as it had in the underlying case, a bill of review proceeding. *See, e.g., Durham v. Barrow*, 600 S.W.2d 756, 760 (Tex.1980); *see generally Baker v. Goldsmith*, 582 S.W.2d 404, 406 (Tex.1979). A collateral attack seeks to avoid the effect of a void judgment. *See, e.g., Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878, 881 (Tex.1973). As discussed in these opinions, direct and collateral attacks are subject to constraints imposed by statutory

and common law and court rules. Additional constraints are imposed by statute for attacks on termination orders signed after January 1, 1997. *See* TEX. FAM.CODE ANN. § 161.211 (Vernon Supp.1998) (requiring direct and collateral attacks to be filed within six months of termination decree and, if the decree is based on an unrevoked affidavit of relinquishment of parental rights or an unrevoked affidavit of waiver of interest in a child, limiting the grounds for setting aside the decree to "fraud, duress, or coercion in the execution of the affidavit").

damus and prohibition. A writ of mandamus will issue only if, within ten days of the date of this opinion, the trial court does not (1) vacate its order scheduling the resumption of the hearing on the Quirogas' petition and requiring the Lamberts to produce Baby Girl Adams at the hearing and then (2) dismiss the Quirogas' suit for lack of jurisdiction. A writ of prohibition will issue only if the trial court does not otherwise refrain from exercising jurisdiction in the underlying case.