Opinion issued February 10, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00834-CV

———————————

Jerry L. Berwick, Appellant

V.

Richard T.
Wagner, Appellee



 



 

On Appeal from the 309th District Court

Harris County, Texas



Trial Court Case No. 2009-18953

 



 

O P I N I O N

          Appellant
Jerry Berwick appeals the trial court’s order registering a California
parentage judgment as a child custody determination under section 152.305 of
the Texas Family Code.  Berwick argues
that the California judgment, which was signed pursuant to a stipulation filed
by the parties, does not qualify as a child custody determination under the
Uniform Child Custody Jurisdiction and Enforcement Act (“UCCJEA”[1]) because (1) only the
pleadings and the parties’ stipulation, rather than the actual judgment,
expressly address custody, and (2) even if the judgment could otherwise qualify
as a custody order, the California court did not have jurisdiction to determine
custody before the child at issue was born.[2]    

          We
affirm the trial court’s judgment registering the order.  

STATEMENT OF FACTS

Berwick and appellee Richard
Wagner, both men, were in a relationship with each other from 1994 through
2008.  They were legally married in
Canada in 2003 and registered as domestic partners in California in 2005.  They lived together in Houston from 1997
until 2008.    

In 2005, the couple entered into a
gestational surrogacy agreement with a married woman in California for her to
carry a child for them.  In March 2005,
doctors implanted the woman with embryos formed from Berwick’s sperm and ova
anonymously donated to both Berwick and Wagner, which resulted in
pregnancy.  

In September 2005, before the
child’s birth, Berwick and Wagner filed a Petition to Establish a Parental
Relationship with the child (“the Petition”) in a California district court.[3]  The Petition requested that the California
court deem both Berwick and Wagner the unborn child’s legal parents, award the
couple “legal and physical custody” of the child upon its birth, direct that
they would assume financial responsibility for the child, and order their names
placed on the child’s birth certificate under the parent headings.  

Attached to the Petition was a
“Stipulation in Support of Application for Judgment” (“the Stipulation”) and a
proposed judgment.  The Stipulation
included agreements by Berwick, Wagner, the surrogate, and the surrogate’s
husband that:

·       
The parties entered into a surrogacy contract with the intention that
Berwick and Wagner would be the child’s legal parents on the birth certificate.


 

·       
Berwick and Wagner would have sole financial responsibility for the
child.

 

·       
Berwick and Wagner would gain legal custody of the child immediately upon
the child’s birth.  

 

·       
The parties, also, “stipulate[d] to the proposed judgment attached as
Exhibit ‘A,’ . . . .”    

 

Exhibit A was a proposed judgment entitled “Judgment
of Paternity.”  It provided that:

Pursuant to the stipulation
filed between the parties, and the evidence presented, IT IS HEREBY ORDERED,
ADJUDGED, AND DECREED AS FOLLOWS:

 

1.     Petitioner Berwick has
judgment in that Petitioner Berwick is declared to be a legal parent of any
child born to [the surrogate] after March 31, 2005, and before January 31,
2006.

 

2.     Petitioner Wagner has
judgment in that Petitioner Wagner is declared to be a legal parent of any
child born to [the surrogate] after March 31, 2005, and before January 31,
2006.

 

3.     [The surrogate] is declared not
to be the mother of any child born to [the surrogate] after March 31, 2005, and
before January 31, 2006.

 

4.     [The surrogate’s husband] is
declared not to be the father of any child born to [the surrogate] after
March 31, 2005, and before January 31, 2006 . . . .

 

6.
The hospital where [the surrogate] gives birth to any child after March 31,
2005, and before January 31, 2006, is hereby directed to prepare the original
birth certificate in accordance with the terms of this judgment as follows:

 

a.       Name the child in accordance with the
directions given by Berwick or Wagner;

 

b.       List the legal name of Berwick in the
space provided for 

father . . .

 

                   d.       List
the legal name of Wagner in the space provided for 

mother
. . . .

 

          IT IS SO ORDERED, ADJUDGED, AND DECREED  

 

On September 29, 2005, the California court signed and
dated the parties’ proposed judgment (“the California judgment”).  The child, C.B.W., was born in California two
months later, on December 7, 2005. 
Berwick and Wagner assumed custody of C.B.W. in California and then
brought him to Houston, where they lived together for several years as a
family.        

A.              
The Texas SAPCR proceeding

In 2008, Berwick, the biological
parent listed on C.B.W.’s birth certificate as “father,” ended his relationship
with Wagner.  In response, Wagner, the
non-biological parent listed on C.B.W.’s birth certificate under the section
for “mother,” filed a Suit Affecting the Parent-Child Relationship (SAPCR) in
Texas.  Wagner sought to establish joint
managing conservatorship of C.B.W.. 
Berwick counter-claimed, seeking sole managing conservatorship and a
finding by the trial court that Wagner did not have standing as a “parent” to
seek custody because he was not biologically-related to C.B.W..  These claims remain pending in trial court
and are not at issue in this appeal.

B.              
The registration proceeding underlying this appeal

In a separate proceeding, but to
bolster his standing claim in the SACPR proceeding, Wagner requested that the
trial court register the California judgment establishing his parent-child
relationship with C.B.W. as a “child custody determination.”  This request was made under section 152.305(a)
of the Texas Family Code, which permits a “child custody determination issued
by a court of another state . . . be registered in this state, with or without
simultaneous request for enforcement.”  Tex. Fam. Code Ann. § 152.305(a) (Vernon 2008).  Upon receipt of a registration request under
section 153.305(a), the court must serve a copy on certain parties impacted by
the order.  Id. §
152.305(b).  If the registration is not
timely contested, the foreign judgment is confirmed and enforcement of that
order may be sought in the Texas courts. 
Id. §152.305(c)(3); see
also id. §§ 152.303, 152.306.     

Berwick timely contested the
registration, asserting that the California judgment, which does not mention “custody,” does not
qualify as a child custody determination. 
Because the parties asserted that the paternity judgment could be
relevant to Berwick’s challenge to Wagner’s standing in the SAPCR proceeding,
the trial court consolidated—only for
purposes of a hearing and related briefing—the registration and standing issues. 
On August 21, 2009, following a hearing, the trial court found the
California judgment to be a “child custody determination” and ordered it
registered pursuant to section 152.305 of the Texas Family Code.[4]  Berwick filed this appeal.  See id. § 152.314 (providing for accelerated appeal).          

ANALYSIS

We must interpret the UCCJEA to
determine if the California judgment qualifies as a child custody
determination.  If it does, we must also
decide whether California lacked jurisdiction to enter such a judgment before
C.B.W. was born.    

CHILD CUSTODY DETERMINATION

Berwick first argues that the trial
court improperly relied upon custody language in the Petition and Stipulation,
rather than looking only to the language of the California judgment, in
determining that the judgment could be registered as a child custody
order.  He further argues that, because
the California judgment is facially silent as to custody, it cannot be
considered a child custody determination.

As an initial matter, we note that
while there was discussion at the hearing about whether the custody recitations
in the Stipulation were part of the California judgment, the trial court never,
as Berwick asserts, conditioned his conclusion that the judgment was a child
custody determination on language of the Stipulation.  That said, we agree with Berwick that the
California judgment’s recitation that it was entered “pursuant to” the
Stipulation does not incorporate that stipulation’s terms by reference.  The trial court correctly concluded, however,
that the California judgment at issue here is a child custody determination for
purposes of registration under section 305 of the UCCJEA.  

Incorporation of the Stipulation 

A.   Applicable law

We construe orders and judgments
under the same rules of interpretation as those applied to other written
documents.  Azbill v. Dallas Cnty. Child Protective Servs. Unit, 860 S.W.2d 133,
136 (Tex. App.—Dallas 1993, no writ). 
Before one document can incorporate a second document, the first
document must unmistakably make the second document a part of it.  Id.  A mere reference to the second document
is not an incorporation.  Id.  Courts
should not give conclusive effect to a judgment’s use or omission of commonly
employed decretal words, but should instead determine what the court
adjudicated from a fair reading of all the judgment’s provisions.  McCollough
v. McCollough, 212 S.W.3d 638, 647 (Tex. App.—Austin 2006, no pet.)
(quoting Wilde v. Murchie, 949 S.W.2d
331, 332 (Tex. 1997)).[5]  

B.   Analysis   

Here, the California district court
entered judgment “[p]ursuant to the stipulation filed between the parties, and
the evidence presented . . . .”  Berwick
argues that the California judgment’s reference to the Stipulation was mere
decretal language confirming that the judgment was decided based upon the
pleadings and evidence in the case. 
Wagner does not respond to this argument in his brief.    

The phrase “pursuant to” is not
equivalent to “incorporated.”  Trim v. Daniels, 862 S.W.2d 8, 10 (Tex.
App.—Houston [1st Dist.] 1992, writ denied); see also Caudill v. N. Am. Media Corp., 200 F.3d 914, 917 (6th Cir.
2000) (holding judgment entered “pursuant to” parties’ settlement agreement did
not incorporate terms of the settlement agreement).  We thus agree with Berwick that the
Stipulation’s reference to “legal custody” is not incorporated into the
judgment, rendering the judgment silent as to the issue of custody.  

The inquiry does not end here,
however, because Wagner argues that the judgment qualifies as a child custody
determination despite the absence of customary custody provisions on the face
of the judgment.  We agree.  

The California Judgment as a “child
custody determination”

A.   Standard of Review

We review the trial court’s
interpretation of applicable statutes de novo. Waltenburg v. Waltenburg, 270 S.W.3d 308, 312 (Tex. App.—Dallas
2008, no pet.) (citing Bragg
v. Edwards Aquifer Auth., 71 S.W.3d 729, 734 (Tex. 2002)).  Our objective is to determine and give effect
to the legislature’s intent.  Id. (citing Nat’l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex.
2000)).  The UCCJEA must be “applied and
construed to promote the uniformity of the law among the states that enact
it.”  Tex.
Fam. Code Ann. § 152.001.  

B.   Applicable Law

The UCCJEA provisions adopted by
Texas define several of the terms at issue here:

(3)      “Child custody
determination” means a judgment, decree, or other order of a court providing
for legal custody, physical custody, or
visitation with respect to a child. 
The term includes permanent, temporary, initial, and modification
orders.  The term does not include an
order relating to child support or other monetary obligation of an
individual.  

 

(4)     “Child custody proceeding” means a proceeding in which legal custody, physical custody, or
visitation with respect to a child is an issue.  The term includes a proceeding for divorce,
separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from
domestic violence in which the issue may
appear . . . .    

. . . . 

(7)     “Home state” means the state in which a child lived with a
parent or a person acting as a parent for at least six consecutive months
immediately before the commencement of the child custody proceeding.  In the case of a child less than six months
of age, the term means the state in which the child lived from birth with a
parent or a person acting as a parent. . . . 

 

(8)     “Initial determination” means the first child custody
determination concerning a particular child. 


. . . .

(11)   “Legal custody” means the managing conservatorship of a child.

. . . .

(14)   “Physical custody” means the physical care and supervision of a
child.

 

Tex. Fam. Code Ann. § 152.102 (Vernon 2008) (emphasis added).  Substantively identical definitions have been
adopted under California law.  Cal. Fam. Code § 3402 (West 2008).[6]

Under the Texas codification of the
UCCJEA, Texas courts must recognize and register child custody determinations
by courts of other states, provided that either (1) the foreign state court
“exercised jurisdiction under statutory provisions substantially in accordance”
with the UCCJEA, or (2) the foreign child custody determination “was made under
factual circumstances meeting the jurisdictional standards” of the UCCJEA.  Tex.
Fam. Code Ann. §§ 152.303(a),152.305; Waltenburg v. Waltenburg, 270 S.W.3d 308,
312 (Tex. App.—Dallas 2008, no pet.).   

Under both the California and Texas
codifications of the UCCJEA, a court has jurisdiction to make a child’s initial
custody determination when the custody-determining state is the child’s home
state either (1) when the action is commenced, or (2) within six months before
the initial petition is filed if the child is absent but a parent or person
acting as a parent continues to live in the state.  See Cal. Fam. Code § 3421(a)(1) (West 2008);
Tex. Fam. Code Ann. § 152.201(a)(1)
(Vernon 2008).  If neither of these
apply, the inquiry focuses on whether the child and a parent have significant
ties to the state and whether there is another state where jurisdiction is
proper.  See generally Cal. Fam. Code
§ 3421 (West 2008); Tex. Fam. Code Ann. § 152.201 (Vernon 2008). 
When there are competing states with proper jurisdiction over a child
custody matter, the proceeding first commenced usually has overriding
jurisdiction.  See generally Tex. Fam. Code
Ann. § 152.206 (Vernon 2008).  

C.   Analysis

Berwick concedes that section
152.102(4) identifies proceedings for “paternity” and “termination” as examples
of a “child custody proceeding” in which custody or visitation issues “may
appear,” but he contends that a parentage order cannot be a child custody
determination under the UCCJEA absent express
adjudication of custody in the judgment. 
In response, Wagner argues that the Court should examine the nature of
the order.  McCollough, 212 S.W.3d at 647 (“Courts should . . . determine what
the trial court adjudicated from a fair reading of all the judgment’s
provisions.”)  This particular parentage
judgment, according to Wagner, did more than merely establish the paternity of
a single parent.  Rather, it expressly
adjudicated possessory rights to C.B.W. between his presumptive parents (the
surrogate and her husband) and the intended parents (Berwick and Wagner).      

Applying the plain language of the
UCCJEA and the cases interpreting it to the narrow and unique facts of this
case, we conclude the trial court correctly recognized the California judgment
as a child custody determination because it resulted from proceedings in which
“legal custody, physical custody, or visitation [was] an issue” between the
presumptive and intended parents.  Tex. Fam. Code Ann. § 152.102 (Vernon 2008).  While custody was not disputed between
Berwick and Wagner in that proceeding, it was very much at issue with relation
to C.B.W.’s surrogate mother and her husband vis a vis C.B.W.’s biological
father and domestic partner.

Berwick primarily relies on In re McMillan, 265 S.W.3d 918, 918-20
(Tex. App.—Austin 2008, orig. proceeding), for the proposition that paternity
actions are not covered by the UCCJEA. 
In McMillian, there was a
pending child custody proceeding in Tennessee, but the Tennessee court would
not allow a party claiming paternity of the child to challenge another person’s
acknowledgement of paternity on file in Texas. 
265 S.W.3d at 919.  The petitioner
thus filed suit in Texas to challenge the acknowledgment of paternity, but
affirmatively disclaimed in his Texas pleadings any desire to adjudicate
custody matters and expressly acknowledged custody matters were already pending
in a Tennessee court.  Id. at 919-20.  On those facts, the Austin Court of Appeals
concluded that the parentage proceedings did not “raise custody or visitation
issues.”  Id.  It accordingly found the
proceeding was not a child custody proceeding under the UCCJEA.  

Berwick additionally points to
several cases from other jurisdictions concluding that paternity adjudications
did not include child custody determinations, but these are likewise
inapposite.  For example, in Sanchez v. Fenandez, the Florida court
of appeals held that custody was not at issue in a paternity suit because, like
in McMillian, the petitioner
expressly excluded custody issues by acknowledging in his pleadings that
possession and custody was proper with the child’s mother in Columbia.  915 So. 2d 192, 193 (Fla. Dist. Ct. App.
2005).  In Lozano v. McCutcheon, the Iowa court of appeals held a paternity
and support order obtained by the state’s Child Support Recovery Unit was not a
child custody determination because custody was not mentioned and because a
statute in fact expressly prohibited joint adjudication of custody with support
issues.  2004 WL 574664, at *1 (Iowa Ct.
App. March 24, 2004).[7]

We recognize, as McMillian and the cases cited by Berwick
from other jurisdictions demonstrate, that not all proceedings related to
parentage involve custody.  But many do,
either expressly or by implication.  C.f. Kiefer v. Touris, 197 S.W.3d 300,
302 (Tex. 2006) (recognizing that trial court order setting aside previous
parentage adjudication also set aside custody and support obligations “by
implication”).  The California
proceedings in this case involved none of the specific circumstances that led
the courts in the cases cited by Berwick to find that the parentage claims at
issue did not involve custody determination. 

The cases cited by Wagner
recognizing that proceedings to terminate parental rights involve child custody
determinations are more analogous here.  See, e.g., In re J.C.B., 209 S.W.3d 821, 824 (Tex. App.—Amarillo 2006, no
pet.) (“Actions to terminate parental rights fall within the scope of child custody
determinations.”).  The California
proceedings did not just involve the limited question of one person’s genetic
parentage, as in McMillian.  Instead, the California court allocated
parentage and—by necessary implication—custody between the presumptive parents whose
rights were terminated and the intended parents who were declared legal
parents.  

Berwick argues that
termination-of-parental-rights cases are inapplicable because (1) a surrogate
that is not genetically related to a child does not have legal rights to the
child and thus does not have rights to terminate, (2) any rights the surrogate
and her husband might have in this case had were terminated by their contract
with Berwick and Wagner, not by the California order, and (3) the California court
did not follow the procedures under California law for terminating parental
rights.  But the woman who gives birth to
a child in California is presumed to be the mother, Cal. Fam. Code § 7610 (West 2008), and when she is married, as in this case, her
husband is presumed to be the father.  Cal. Fam. Code § 7611(a) (West 2008).   It may well be that the lack of genetic
relation ultimately deprives a surrogate of rights to a child as measured
against the rights of biological and/or intended parents under the relevant
laws of a particular state.  It does not
follow, however, that a judgment terminating presumptive parents’ rights in
favor of intended parents’ rights is not a child custody determination for registration
purposes under section 1532.305(a) in the same way an order terminating a
genetically related parent would be. 
Berwick cites no cases making such a distinction, and he does not
attempt to reconcile his position with cases holding that suits to extinguish
parental obligations premised on the lack of a genetic connection with a child
involve child custody determinations.  As
the court in Guernsey v. Guernsey explained
in holding that a paternity suit brought by a child’s legal father to establish
that the child born of his marriage was not
actually his biological child involved “custody,” a suit to undo parental
rights is by definition a custody matter:

 Mr. Guernsey argues that this is not a custody
proceeding and, therefore, he says, the [UCCJEA-predecessor statute] UCCJA . .
. [is] not applicable.  He insists that
this case “involves a petition for relief from a judgment, not a modification
of it.”  His argument is one of
semantics.  Mr. Guernsey, who has legal
custody of the child, filed a petition asking the trial court relieve him of
that custody.  Such a request involves a “custody
proceeding,” no matter what name is given to the petition.  The UCCJA . . . appl[ies] to interstate
actions to determine who will have custody. 
It is logical to apply the UCCJA when determining who will not have
custody.  Mr. Guernsey’s request that he
be declared not to be the father of the minor child is a custody-determination
proceeding of the most drastic kind.

 

794 So. 2d 1108, 1110 (Ala. Civ. App. 1998) (citations
omitted).  

Finally, we are unpersuaded by
Berwick’s argument that the judgment must expressly mention the word “custody”
to qualify as a child custody determination. 
As authority for this proposition, Berwick cites Richardson v. Green, 677 S.W.2d 497 (Tex. 1984), a supreme court
case recognizing that custody and termination proceedings are different for
purposes of that court’s appellate jurisdiction, and Williams v. Knott, 690 S.W.2d 605 (Tex. App.—Austin 1985, no writ),
a case applying Richardson to hold
that a termination-of-parental-rights suit was not a child-custody proceeding
under the UCCJEA.  Williams’ analysis has since been rejected by several courts
distinguishing Richardson on its
facts.  See, e.g., White v. Blake, 859 S.W.2d 551, 562 (Tex. App.—Tyler
1993, orig. proceeding) (“[S]everal out-of-state appellate courts have declined
to follow this portion of the holding in the Williams opinion, and . . . we likewise decline to follow
it.”)  Importantly, since Williams was decided, “termination”
suits were added to the list of specifically enumerated types of proceedings
that may involve custody issues.[8]  As the San Antonio Court of Appeals has
recognized:

All fifty states have
enacted some version of the [UCCJEA-predecessor] UCCJA, and virtually all have
interpreted it to apply to suits involving the termination of parental rights
and adoption, including revocation of consent, because suits of this nature
inevitably affect custody and visitation, and broad application of the uniform
act promotes its underlying purposes.

 

In re
Lambert, 993 S.W.2d 123, 128 (Tex. App.—San Antonio 1999, orig. proceeding).

We decline to adopt Berwick’s
approach requiring specific words to render a judgment a child-custody
determination.  As a general proposition,
“there can be no doubt that the custody rights of a parent are affected by the
termination of his or her parental rights, since these rights are severed
completely and permanently.”  White, 859 S.W.2d at 561.  This is true whether the parent is the
presumptive or biological parent, and whether “custody” is expressly or
implicitly addressed.  We glean no
meaningful difference between a judgment that terminates parental rights and
appoints adoptive parents the child’s “managing conservators,” Lambert, 993 S.W.2d at 125 (which
Berwick concedes is a custody proceeding), and the California judgment here
that extinguished any rights held by C.B.W.’s presumptive parents and appoints
Berwick and Wagner “legal parents.”  E.g., Miller-Jenkins v. Miller-Jenkins, 637 S.E.2d 330, 336 (Va. Ct. App.
2006) (“Whatever semantical machinations are involved, any common understanding
of the term ‘parental rights’ includes the right to custody . . . and
visitation.” (citations omitted)).  Because the California order both
terminates the C.B.W.’s presumptive parental rights and grants exclusive
parental rights and—by implication—custody to Berwick and Wagner, the trial
court correctly concluded it qualifies as a “child custody determination” for
purposes of section 152.305.  

JURISDICTION

Berwick next argues that the trial
court should not have registered the California judgment because he contends
the California court lacked jurisdiction to enter an order containing a custody
determination before C.B.W. was born.   
In support, he points to the Texas and California codifications of the
UCCJEA defining a “child” as “an individual who has not yet attained 18 years
of age.”  Cal. Fam. Code §3402(b) (West 2008); Tex. Fam. Code Ann. § 152.102(2)
(Vernon 2008).  He also cites Waltenburg, a Dallas Court of Appeals
case holding that “a court in a state that has adopted the UCCJEA cannot
exercise jurisdiction over a custody claim asserted regarding an unborn
child.”  270 S.W.3d at 318.

Wagner responds by noting that
California law provides expressly that parentage suits may be commenced before
a child is born, and that any judgment is stayed until birth.  See Cal. Fam. Code § 7633 (West 2008);
see also Kristine H. v. Lisa R., 117
P.3d 690, 695-96 (Cal. 2005) (rejecting argument that trial court lacked
subject-matter to enter parentage order before child was born). 
He further contends Waltenburg
is distinguishable on its facts and does not stand for the blanket proposition
that a judgment signed before the birth of a child cannot be recognized under
the UCCJEA as a valid child custody determination.  Finally, Wagner points to several cases,
including a California case, in which courts have exercised jurisdiction under
the UCCJEA before a child is born, but reserved the jurisdictional forum analysis
until after the child’s birth.  See Haywood v. Superior Court, 92 Cal.
Rprt. 2d 182, 186-87 (Cal. Ct. App. 2000); Gullett
v. Gullett, 992 S.W.2d 866, 870 (Ky. 1999).        

Berwick and Wagner filed their
Petition in September 2005, and the California judgment of paternity was signed
that same month.  C.B.W. was not born
until December 2005.  Thus, it is
undisputed that C.B.W. was not yet born when the Petition was filed and the
California judgment was signed.  

While the Waltenburg opinion holds that the “UCCJEA does not apply to unborn
children,” it was decided on different facts. 
We are not persuaded that its primary reasoning applies here.  In that case, a married couple who resided in
Arizona separated while the wife was pregnant, and she moved to Texas before
her child was born.  270 S.W.3d at
311.  Her husband then filed for divorce
in Arizona, seeking custody of their unborn child.  Id.  The child was born in Texas and never lived
in Arizona.  Id.  After the child was
born, the mother filed her own divorce suit in Texas, likewise seeking
custody.  Id.  The Texas court
dismissed the wife’s divorce action in deference to the father’s pending
Arizona action in which he requested custody. 
Id. at 312.  The Dallas Court of Appeals reversed, holding
that the trial court erred in dismissing the Texas suit because the “text of
the UCCJEA precludes its application to unborn children” and, thus, the Arizona
court never properly obtained jurisdiction over the husband’s custody claim that
was filed before the child was born.  Id. at 317.  Alternatively, the Waltenburg court reasoned, “[e]ven if we determined the Arizona
court’s jurisdiction as of the date [the child] was born—instead of the date Father filed suit—our conclusion that the Arizona court lacked
jurisdiction over Father’s custody claim does not change” because Texas
immediately became the child’s home state when it was born.  Id.
at 318.

As the Waltenburg court noted, interpreting the UCCJEA to permit a party
to file a pre-birth suit so as to trump any post-birth proper jurisdiction of
another state would run counter to the UCCJEA’s preference for home-state
jurisdiction.  Id.  (“[A] party could file
suit pre-birth under the UCCJEA provision authorizing jurisdiction when ‘no
other court has jurisdiction,’ and use the ‘simultaneous proceeding’ provision
to control, post-birth, whether the child’s home state can ever exercise that
‘priority’ jurisdiction”).  For that
reason, the court did not allow the pre-birth location of an unborn child to
establish a jurisdictional connection to a state where the child had never
lived.  We agree such a result would be
contrary to the UCCJEA’s provisions prioritizing home-state jurisdiction.  We do not, however, read Waltenburg’s refusal to recognize UCCJEA orders entered pre-birth  simply because the petition is filed (or the
judgment entered) before the child is born so broadly as to include cases where
the court otherwise has proper jurisdiction over the matter upon the child’s
birth.  In cases in which the pre-birth
suit and the “home state” of the child are one and the same, courts have
recognized that UCCJEA petitions can be filed pre-birth with the jurisdictional
analysis reserved for post-birth (if there is an issue at that point about jurisdictions
or competing forums).  And Texas law
expressly recognizes that certain types of UCCJEA proceedings—such as parental-rights-termination cases—can be commenced before the birth of a
child.  See generally Tex. Fam. Code
Ann. § 161.102 (Vernon 2008) (“A suit for termination may be filed
before the birth of a child”); In re
J.C.B., 209 S.W.3d 821, 822-23 (Tex. App.—Amarillo 2006, no pet.)
(recognizing parental-right-termination case as covered by the UCCJEA).  

By statute, Texas law permits
registration of a foreign custody order if the foreign state (1) “exercised
jurisdiction under statutory provisions substantially in accordance” with the
UCCJEA or (2) the “factual circumstances” meet the UCCJEA’s jurisdictional
standards.  Tex. Fam. Code Ann. § 152.303(a) (Vernon 2008).  Thus, if a UCCJEA judgment is signed as to an
unborn child and the circumstances are such upon the child’s birth that the
court has sufficient jurisdictional ties, then recognizing that judgment as a
child custody determination for registration purposes is proper, as the trial
court found.          

Here, the California court entered
judgment before C.B.W. was born, but under California law, that order was
stayed until his birth.  Jurisdiction
attached upon the child’s birth in California. 
Berwick has not argued that California jurisdiction was not proper
immediately upon C.B.W.’s birth, and no other state was competing for
jurisdiction over C.B.W. at that point. 
We hold, on these facts, that the California court’s judgment was a proper
exercise of its jurisdiction under California law.  

CONCLUSION

The trial court properly registered
the California judgment as a child custody determination under section
152.305.  We affirm the trial court’s
judgment.

 

 

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Alcala and Bland.

 

 

 











[1]
              The
UCCJEA is a set of rules for determining which state has jurisdiction to
determine custody disputes and has been adopted by 48 states, including Texas
and California.

  





[2]           Berwick
additionally contends that, “[e]ven if this Court were to hold that the
paternity judgment was properly registered, the judgment is unlikely to be
enforceable” on various public policy grounds. 
We do not address this argument, however, because enforcement is not at
issue in this proceeding.  





[3]           California
courts are expressly vested with jurisdiction over persons who cause conception
with the intent to become legal parents by assisted reproduction in
California.  Cal. Fam. Code § 7620(a) (West 2005).  And California law expressly allows for
parentage actions to be brought, and judgment entered, “before the birth of a
child,” but judgment is automatically “stayed until the birth of the
child.”  Cal. Fam. Code § 7633 (West 2005).  





[4]
              The
court also concluded at that hearing that Wagner had standing in the SAPCR
litigation as both a “parent” and a “person acting as a parent.”

  





[5]
              The
same analysis applies under California law, which construes orders and judgments under the same rules of interpretation as
those applied to other written documents. 
Hirshfield v. Schwartz, 110
Cal. Rptr. 2d 861, 872 (Cal. Ct. App. 2001). 
To incorporate an external document by reference, the subject document
must contain some clear and unequivocal reference to the fact that the terms of
the external document are incorporated.  Amtower v. Photon Dynamics, Inc., 71 Cal.
Rptr. 3d 361, 384 (Cal. Ct. App. 2008).  “[T]he mention of [a document] is not the
same as specifically directing the parties’ attention to the terms of the
external document in a manner that could be construed as eliciting the parties’
consent to its separate terms.”  Id. at 384.  A court order entered “[b]ased on the
Settlement Agreement amongst the parties” does not incorporate the terms of the
parties’ settlement agreement.  See O’Connor v. Colvin, 70 F.3d 530 (9th
Cir. 1995). 

 





[6]
              The
only exception is Texas’s definition of “legal custody,” a term that remains
undefined in the California version of the UCCJEA.  





[7]
              In
two other out-of-state cases cited by
Berwick, the courts looked to statements about custody in the parties’ pleadings
to determine whether the proceedings involved issues of child custody, which
Berwick argues it would have been improper for the trial court to do in this
case.  See Greenhough v. Goforth,
126 S.W.3d 345, 349 (Ark. 2003) (holding lawsuit to establish paternity and
support was a child custody proceeding because the petition stated that petitioner should have custody subject to
“reasonable visitation of the respondent”); Harshberger
v. Harshberger, 724 N.W.2d 148, 157 (N.D. 2006) (holding paternity suit did
not involve custody until the petitioner amended
pleadings to include request for custody determination).  The last case cited by Berwick—a
one-paragraph opinion simply stating the UCCJEA did not apply there because
“the sole issue before the court was that of paternity”—does not contain enough
details about the underlying facts to be instructive.  Anthony
v. Gina, 52 A.D.3d 1249 (N.Y. App. 4th 2008).   





[8]
              The
definition of “custody proceeding” in
the UCCJEA’s predecessor statute did not expressly identify “termination” or
“paternity” as types of actions that may involve custody.   It was defined as “a proceeding in which
custody determination is one of several issues, such as an action for divorce
or separation, and includes child neglect and dependency proceedings.”  UCCJA § 11.52(3).